549 So.2d 944 (1989)
Russell WING
v.
Barbara WING.
No. 07-CA-57972.
Supreme Court of Mississippi.
September 20, 1989.
Shirley Payne, Horn & Payne, Jackson, for appellant.
Whitman B. Johnson III, Steen Reynolds Dalehite & Currie, Jackson, for appellee.
En Banc.
*945 PRATHER, Justice, for the Court:
The retrospective enforceability of an automatic escalation clause in a child support judgment is the subject of this appeal. Barbara Wing filed a motion for contempt against her ex-husband, Russell Wing, for non-payment of monies due for their child's support under the automatic adjustment clause of their property settlement agreement. From an adverse ruling of the Chancery Court of Hinds County, Russell Wing appeals an arrearage judgment of $13,736.40, a contempt order, an incarceration order, a wage withholding order, and imposition of attorneys' fees and costs.
Russell Wing assigns as error the indefiniteness of the escalation clause, prohibiting a contempt finding.
Barbara Wing, cross-appellant, also feels aggrieved of the chancery decree and assigns as error that the trial court erred in its failure to hold the defendant in contempt for failure to properly fund an annuity as required by the property settlement agreement, and in accepting the annuity offered by Russell Wing in satisfaction of property settlement requirement.

I.
Barbara and Russell Wing were divorced in October, 1979. At the time of the divorce, Russell Wing was employed by Jackson State University. His yearly salary was $18,411.48. The parties filed a Property Settlement Agreement along with their Joint Bill of Complaint. By the terms of this agreement, Russell Wing was to pay $400 per month child support for the couple's only child, Laurel. (Laurel was six at the time of the divorce in 1979). Also included in the agreement was an "escalation clause" to increase child support each year according to the rate of inflation "as set forth in the consumer price index" (CPI). Also, the agreement required Russell Wing to name Laurel as beneficiary of his tax sheltered annuity fund through Jackson State University and to fund that annuity at the rate of $900 per year.
In 1983, Russell Wing changed employment. Unfortunately, his employer went bankrupt in late 1983. Russell Wing was out of work from December, 1983 until May, 1984, when he found a position with the Brookhaven School District. His 1984 earnings were $11,887.00. He earned an annual sum of $22,525.00 for the 1986-1987 school year.
From the time of the divorce until October, 1985, when Barbara Wing filed the first motion to cite defendant for contempt, Russell Wing paid $400 per month in child support, notwithstanding his reduced income. The October, 1985, motion alleged that Russell Wing was in arrears for one month's payment in the sum of $400.00 and for refusal to fund his annuity at $900.00 per year and to make his daughter its beneficiary. No hearing appears to have been had on this motion.
The present motion for contempt was filed on August 22, 1986, alleging an arrearage of $14,260.32 and a failure to provide proof of the existence and funding of the annuity.
A judgment dated October 21, 1986, was entered granting Barbara Wing an arrearage of $7,400.00 for the annuity fund established for the child's benefit and granting Russell Wing thirty (30) days within which to fund an annuity contemplated by the property settlement agreement. The decree recited that Russell Wing would be given credit for a total sum of $1,143.00 for voluntary private school tuition. Attorney's fees of $250.00 and court costs were allowed and payment acknowledged by Barbara Wing. This order was signed by both attorneys. On October 21, 1986, a notice of appeal was filed by Russell Wing, with a notice to the court reporter and an appearance bond in the penal sum of $10,189.24 from the order entered October 20, 1986.
However, following these appeals, a subsequent judgment was entered on October 24, 1986, entering Barbara Wing's judgment for past due support of $13,736.40[1], plus a withholding order against Russell *946 Wing's salary for $660.04 per month beginning November 1, 1986, attorney's fees of $1,100.00 and court costs. Additionally, since Russell Wing had not paid $7,014.39 arrearage owed (presumably for the annuity policy), Wing was ordered incarcerated until "such sum" (presumably the $7,014.39 figure), plus attorney's fees and court costs are paid."

II.
At the time of the Wings' divorce the parties entered into a Property Settlement Agreement which was made part of the judgment. Clause 2 states:
The Husband hereby agrees and obligates himself to pay to the Wife the sum of $400.00 per month for the support of said minor child beginning October 1, 1979, and on the first of each month thereafter until the said minor child shall marry, become self-supporting, became otherwise emancipated, or until order of this Court to the contrary. The Husband further agrees to increase said support each year according to the rate of inflation as set forth in the consumer price index. (emphasis added).
Russell Wing regularly paid $400.00 per month, although sometimes belatedly and despite personal financial difficulties. He also voluntarily paid additional sums for violin lessons, private schooling, and orthodontic work.
Barbara Wing presented testimony that Russell Wing was in arrears in the amount of $13,736.40. The testimony offered was taken from summary reports prepared by the Mississippi Employment Security Commission based on data released by the Bureau of Labor Statistics, Southeastern Regional Office, Atlanta, Georgia. Two consumer price indices were available, one for all urban workers and another for urban wage earners and clerical workers. All items were based upon United States City Averages. According to Barbara Wing's witness, the calculation would result in an increase in monthly child support to the sum of $660.04.[2] Russell Wing offered different calculations which indicated an arrearage of only $7,014.39, at most.
The chancellor viewed Russell Wing's testimony as an admission that he had willfully failed to comply with the divorce decree and found the defendant in civil contempt.
In reviewing a judgment for contempt, this Court proceeds ab initio. It is our responsibility to determine whether on this record Russell Wing is guilty of civil contempt. Cook v. State, 483 So.2d 371, 374 (Miss. 1986). Section 11-51-12 (Supp. 1988), Appeal from Judgment of Civil Contempt, provides, in pertinent part:
A person ordered by any tribunal, except the supreme court, to be punished for a civil contempt, may appeal to the court to which other cases are appealable from said tribunal. If jail confinement is ordered to compel the payment of any monetary sum, the contemnor shall be allowed to appeal upon the execution of an appearance bond, payable to the appellee, with sufficient sureties, to be approved by the sheriff or other officer in whose custody the appellant may be, in the penalty of one hundred twenty-five percent (125%) of such sum as he has been adjudicated in contempt for failure to pay, unless the court shall determine that a lesser bond should be required. The bond shall be conditioned to abide the results of the appeal.
(2) Where the punishment for civil contempt is other than jail confinement, the contemnor shall be allowed to appeal upon the posting of a bond, payable to the appellee, with sufficient sureties, to be approved by the tribunal appealed from, in an amount to be fixed by such tribunal, conditioned to abide the results of the appeal.
(3) All appeals allowed in accordance with the provisions of this section shall operate as a supersedeas.

*947 (4) The burden of proof in civil contempt shall be proof by a preponderance of the evidence.
The standard of review of a chancellor's finding of ultimate fact is limited. This Court upholds such a finding where there is substantial evidence consistent with the finding made by the Chancery Court. Wood v. Wood, 495 So.2d 503 (Miss. 1986); Carr v. Carr, 480 So.2d 1120 (Miss. 1985); Tucker v. Tucker, 453 So.2d 1294 (Miss. 1984). Such finding will not be disturbed unless manifestly wrong. Wood, supra; Carr, supra. Our inquiry here is limited to whether or not the judgment is violated and this necessarily includes questions of whether or not it was possible to carry out the judgment of the Court. Ladner v. Ladner, 206 So.2d 620, 623 (Miss. 1968).
It is axiomatic that before a person may be held in contempt of a court judgment, the judgment must "be complete within itself  containing no extraneous references, leaving open no matter or description or designation out of which contention may arise as to the meaning. Nor should a final decree leave open any judicial question to be determined by others, whether those others be the parties or be the officers charged with execution of the decree... ." Morgan v. U.S. Fidelity & Guaranty Co., 191 So.2d 851, 854 (Miss. 1966), quoting Griffith, supra, § 625; see also, Miss.R.Civ.P. 65(d)(2); Hall v. Wood, 443 So.2d 834, 841-42 (Miss. 1983); Aldridge v. Parr, 396 So.2d 1027 (Miss. 1981); Webb v. Webb, 391 So.2d 981 (Miss. 1980).
On reviewing the record, we disagree with the chancellor. The Property Settlement Agreement at issue is uncertain. Through his testimony, Russell Wing demonstrated that an "ordinary person reading the court's order" would not "be able to ascertain readily from the document itself exactly what conduct is prescribed or mandated." See Comment, Miss.R.Civ.P. 65(d). A genuine dispute existed over the amount owed, over the commencement year of the escalation clause, and over which Consumer Price Index was to be utilized. The uncertainty in the agreement may have resulted from the novelty, at that time, of using escalation clauses in divorce decrees. Furthermore, at the time this decree was prepared, this Court had not addressed the computation of these clauses. Notwithstanding that the chancellor had little direction, our positive law requires that we reverse the finding of contempt.
Nothing in this decision should be interpreted as a retreat from our recognition that escalation clauses should be included in property settlement agreements. See Tedford v. Dempsey, 437 So.2d 410 (Miss. 1983). Strong public policy calls for provision for increased financial needs of children without additional litigation, incurring attorney's fees, court congestion and delay, and emotional trauma. We reaffirm Tedford and urge attorneys to include escalation clauses "... tied to the parents' earnings or to the annual inflation rate or to some factual combination of the two." 437 So.2d at 419. Tedford dictates that an escalation clause should be tied to: (1) the inflation rate, (2) the non-custodial parent's increase or decrease in income, (3) the child's expenses, and (4) the custodial parent's separate income. See also Adams v. Adams, 467 So.2d 211, 215 (Miss. 1985). These factors channel the escalation clause to relate to the non-custodial parent's ability to pay and the needs of the child. Id. An automatic adjustment clause without regard to all of the above factors runs the risk of overemphasizing one side of the support equation. On the other hand, an increase in the [non-custodial] parent's income does not necessarily entitle the child to more support; nor does an income decrease necessarily signal inability to pay, as when the obligated parent has assets." H. Krause, Child Support in America  the Legal Perspective 24 (1981).
The use of guidelines to modify child support judgments have been employed in other states in varying ways and with varying results. Some states, including Mississippi, have validated the use of the escalation clause when tied to the child's needs and the non-custodial parent's ability to pay. Tedford, supra; Edwards v. Edwards, *948 99 Wash.2d 913, 665 P.2d 883 (1983); In re Marriage of Peters, 33 Wash. App. 48, 651 P.2d 262 (1982). In Edwards, the Washington Supreme Court approved the trial judge's use of a foreseeable limitation, or ceiling, above which the support payment would not rise without a modification hearing on petition of either parent. By statute, Minnesota has addressed its problem by indexing support orders to the rate of inflation with limits to the applicability of the process. Minn. Stat. Ann. § 518.641 (West Supp. 1988). The custodial parent initiates the modification petition to adjust the support payment with notice to the non-custodial parent. Denial of a request for increase may be made if the non-custodial parent's income has not paced the inflation rate. Brackney, Battling Inconsistency And Inadequacy: Child Support Guidelines In The States, 11 Harv. Women's L.J. 197-215 (1988). However, Michigan law allows either parent to request a modification hearing every two years of the initial judgment without any initial showing of changed circumstances. Id. at 212. New Jersey permits administrative modifications. Id. In Miss. Code Ann. § 43-19-101 (Supp. 1989), effective October 1, 1989, the Mississippi Legislature has enacted legislation, setting forward guidelines for child support initial awards; however, these guidelines do not address automatic adjustment of future support.
Noting these problems relating to escalation phrases, we urge the bench and bar, when employing "escalation" clauses for child support, to: (a) specify with certainty the particular cost of living or consumer price index which is to be utilized (there are many); (b) show the applicable ratio (present CPI is to ascertainable CPI as present award is to future award); (c) calculate the base figure as of the date of judgment; (d) establish frequency of adjustments (we suggest nothing less than yearly); and (e) establish an effective date for each adjustment (e.g., anniversary of date of judgment). Caution should be exercised in applying a consumer price index that comports with Mississippi's economic picture, as well as the parent's job status. The ingenuity of the bench and bar will achieve clarity of terms that guide the parents with respect to these support liabilities.
In the instant case, this Court holds that the initial agreement lacks specificity to be enforceable. Certainty as to which consumer price index would apply was lacking and the calculations were unrelated to the father's ability to pay and the child's financial needs. Therefore, as to the finding of contempt against Russell Wing, we reverse and render, together with the increase of child support awards to $660.04 per month based on the escalation clause. The case is remanded for a fact-finding determination of child support based upon the Tedford factors and the five specific items noted in the preceding paragraph. The contempt and incarceration orders are vacated, and the wage withholding order is reduced to $400.00 pending a rehearing.

III.
Cross-appellant Barbara Wing asserts that the chancellor erred in accepting the TIAA-CREF annuity policy which names Laurel as beneficiary. Evidence on the record indicates that TIAA-CREF annuity is adequately funded. The chancellor's interpretation of Clause 6 of the property settlement agreement was that the parties intended to protect Laurel in the event of Russell Wing's untimely death, and that they did not intend to provide a fund which would stand as collateral for a loan.
The standard of review of a chancellor's fact-finding was stated in Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983):
If we find substantial evidence supporting the chancellor's factfindings, they are beyond our power to disturb. Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-708 (Miss. 1983); Anderson v. Watkins, 208 So.2d 573, 575 (Miss. 1968). And, with respect to issues of fact where the chancellor made no specific finding, we proceed on the assumption that the chancellor resolved all such fact issues in favor of appellee. Cotton v. McConnell, 435 So.2d 683, 685 *949 (Miss. 1983); Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947).
The chancellor's findings regarding the annuity policy was supported by the evidence; this decision, therefore, is affirmed. However, this Court reverses and renders as to the money judgment of $13,736.40, contempt order, and incarceration order; this Court reduces the withholding order to $400.00 per month effective with this order, and affirms the finding that the TIAA-CREF annuity policy satisfies the chancellor's order of November, 1985.
REVERSED AND RENDERED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL; REMANDED FOR A HEARING ON THE AMOUNT OF FUTURE CHILD SUPPORT.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] There is no explanation for the two judgments and no challenge to the second judgment entered. See Banks v. Banks, 511 So.2d 933 (Miss. 1987).
[2] The calculation of the rate of inflation was determined by using the current year's Consumer Price Index and deducting last year's Consumer Price Index, to determine the difference. Then dividing the current year's index into the difference to determine the rate of inflation.