641 So.2d 1194 (1994)
Joe Edd MORRIS
v.
Neva Morris STACY.
No. 93-CA-0332.
Supreme Court of Mississippi.
August 11, 1994.
*1195 Lester F. Sumners, Sumners Carter & McMillan, New Albany, for appellant.
Michael Malski, Carnathan & Malski, Amory, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION.
This case, involving the modification of a father's child support obligation, is appealed from the Chancery Court of Lee County, Mississippi. After a hearing on Neva Morris Stacy's (Stacy) complaint for modification of the final decree, the chancellor increased Joe Edd Morris' (Morris) child support obligation for their two children from $200.00 per month per child ($400.00 total) to $500.00 per month per child ($1,000.00 total). The chancellor also ordered Morris to pay to Stacy ten percent (10%) of his adjusted gross income, as defined under the Internal Revenue Code, exceeding $50,000.00. Following the denial of his motion to reconsider, Morris filed his appeal to this Court assigning as error the following:
I. WILL THE PASSAGE OF 29 MONTHS, WITHOUT OTHER PROOF OF CIRCUMSTANCES OR NEED, SUPPORT A MODIFICATION ORDER RAISING CHILD SUPPORT FOR TWO CHILDREN FROM $400 to $1,000 PER MONTH.
II. AFTER ACCEPTING UNCONTRADICTED EVIDENCE OF THE FATHER'S RECENTLY REDUCED INCOME, CAN THE CHANCELLOR APPLY THE 20% GUIDELINE TO AN ASSUMED INCOME OF $50,000.
III. CAN A CHANCELLOR MAKE A SUBSTANTIAL UPWARD DEVIATION FROM THE STATUTORY GUIDELINES WITHOUT A SPECIFIC FINDING JUSTIFYING IT.
IV. ABSENT PROOF OF NEED, CAN A CHANCELLOR ORDER A 10% SUPPORT SURCHARGE ON ALL INCOME OVER $50,000, UNLIMITED IN AMOUNT, WITHOUT "A WRITTEN FINDING IN THE RECORD AS TO WHETHER OR NOT THE APPLICATION OF THE GUIDELINES ESTABLISHED IN [Sec. 43-19-101] IS REASONABLE."

II. STATEMENT OF THE FACTS.
Joe Edd Morris (Morris) and Neva Morris Stacy (Stacy) were married on November 24, 1977. Stacy is employed as a speech language pathologist by the Tupelo Public Schools. At the time of the hearing, she had been a teacher for fourteen and one-half years. Morris is a practicing psychologist and has been in practice in Tupelo since 1980. Unto this marriage were born two children: Meredith Lynn Morris, born May 28, 1981, and Anna Katherine Morris, born June 3, 1982. Morris and Stacy were granted a divorce from each other on July 6, 1990, on the grounds of irreconcilable differences. Incorporated into the final judgment of divorce was a settlement agreement entered into by the parties. Pursuant to this agreement, both parties were granted joint legal custody of the two children, with Stacy given primary physical custody. Morris was required to pay $200.00 per child per month in child support ($400.00 total). Stacy was to maintain insurance on the two children with the parties paying equally all medical and dental expenses not covered by insurance. The agreement also held Morris responsible for paying the children's college expenses to the extent of tuition for a four-year in-state undergraduate degree, room, board, books, and supplies. Stacy is responsible for any other college expenses. Morris was to claim their oldest daughter as a dependent for income tax purposes and Stacy was to claim the younger daughter. Morris was also required to pay Stacy $1,667.00 per month in alimony. This alimony award was to terminate upon her death or remarriage. Stacy was given exclusive use and possession of the family's residence and all contents in that residence. Stacy was required to pay the first deed of trust on this home and Morris was to be responsible for the second and third deeds of trust. Next, Morris was ordered to transfer title to the family's Cadillac automobile to Stacy. He was to assume the *1196 debt on this automobile and hold Stacy harmless for such debt. During the marriage, the couple owned three pieces of property as tenants in common. Morris was to receive all rent income from these properties, but was required to pay the principal and interest on the purchase price, insurance, taxes, repairs, and other expenses related to these properties. Both parties agreed to retain their own independent retirement accounts, state retirement, and other similar deferred tax shelters. Finally, Morris was obligated to pay certain retail accounts incurred by the parties during their marriage. In addition to the above items, this agreement contained provisions stating that Stacy's remarriage or the sale of the family's home would constitute a material change in circumstances affecting child support.
Following the divorce, the parties home was sold. Neva Morris Stacy married Dean Stacy on September 11, 1992. Stacy filed a complaint for modification of the final decree on October 8, 1992. In this complaint, Stacy argued that since the final divorce decree there had been a material change in the circumstances of the parties and prayed that the original decree be modified to increase child support and to require Morris to provide medical, hospital, doctor, and dental insurance for the two children. Morris answered this complaint admitting that there had been a material change in circumstances as a result of Stacy's remarriage, the sale of the house, and his decrease in income, however, he denied that his child support obligations should be increased and also denied that he should be required to provide insurance for the children.[1]
A hearing was held on this matter on December 16, 1992, in the Lee County Chancery Court. The only two witnesses who testified at this hearing were Morris and Stacy. At the conclusion of this hearing, the chancellor issued his opinion. The chancellor's opinion in part reads:
Even though the language of the property settlement and child custody agreement in this case provides that changes in alimony would be considered material changes, those are in fact not binding upon the Court. However, from the proof produced today, and in line with that agreement, I find that there has in fact been a material and substantial change in the circumstances that would warrant an adjustment in the amount of child support that the defendant [Morris] is required to pay. In light of the fact that even though it would appear that the defendant [Morris] has in fact had a reduction in the amount of gross income that is available to him, and taking in light the fact that certain debts that he was obligated to pay have in fact been paid and discharged, I'm of the opinion that child support should be increased from the sum of $200.00 per month per child to the sum of $500.00 per month per child, beginning January 1, 1993, pending further orders of the Court.
In addition thereto, within 30 days after the end of each calendar year, the defendant [Morris] shall be required to furnish to the plaintiff [Stacy] the amount of his gross earnings and operating costs. In any year wherein his adjusted gross income, as defined under the Internal Revenue Code, exceeds $50,000.00, he shall be required to pay an additional sum to the plaintiff [Stacy] of 10% of such sum that exceeds the $50,000.00 adjusted gross income.
The chancellor entered a decree containing these same provisions on March 11, 1993. Following the issuance of the chancellor's opinion, Morris filed a motion to reconsider. This motion was denied on March 11, 1993. Morris then filed his notice of appeal to this Court.

III. ANALYSIS.
Chancellors in this state are given broad discretion in cases regarding the modification of child support. However, "we will reverse when [the chancellor] is manifestly in error in his finding of fact or has abused his discretion." Hammett v. Woods, 602 So.2d 825, 828 (Miss. 1992). See McEwen v. McEwen, 631 So.2d 821, 823 (Miss. 1994). Also, "with respect to issues of fact where the *1197 chancellor made no specific finding, we proceed on the assumption that the chancellor resolved all such fact issues in favor of appellee, Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983), or at least in a manner consistent with the decree." Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). See Love v. Barnett, 611 So.2d 205, 207 (Miss. 1992).
I. WILL THE PASSAGE OF 29 MONTHS, WITHOUT OTHER PROOF OF CIRCUMSTANCES OR NEED, SUPPORT A MODIFICATION ORDER RAISING CHILD SUPPORT FOR TWO CHILDREN FROM $400 to $1,000 PER MONTH.
II. AFTER ACCEPTING UNCONTRADICTED EVIDENCE OF THE FATHER'S RECENTLY REDUCED INCOME, CAN THE CHANCELLOR APPLY THE 20% GUIDELINE TO AN ASSUMED INCOME OF $50,000.
III. CAN A CHANCELLOR MAKE A SUBSTANTIAL UPWARD DEVIATION FROM THE STATUTORY GUIDELINES WITHOUT A SPECIFIC FINDING JUSTIFYING IT.

A. Parties Contentions.
In these assignments of error Morris contends that Stacy did not offer adequate proof to justify a 150% increase in child support (from $400.00 per month to $1,000.00 per month). Morris also argues that the elapse of 29 months was not a material change in circumstances warranting this modification of child support. Morris further contends that there was no proof presented of any increased needs of the children, or any special health needs of the children, or any reduction in Stacy's ability to provide support for the children. In addition, it is Morris' contention that the chancellor based the support pursuant to Miss. Code Ann. § 43-19-101 using an "assumed" income of $50,000.00 and that to do so was error.
Stacy counters these arguments by asserting that there is an adequate and substantial basis in the record to justify the chancellor's decision to increase Morris' monthly child support obligation. Stacy also contends that the chancellor in the instant case did not base his decision on the guidelines set forth at Miss. Code Ann. § 43-19-101 and that to do so under the facts of this case would be impossible.

B. Applicable Law.
With regard to the modification of a child support agreement, this Court in the case of McEachern v. McEachern, 605 So.2d 809 (Miss. 1992) said, "The burden of proof that must be met by the party seeking a financial modification is to show a material change of circumstances of one or more of the interested parties, whether it be the father, mother, or the child(ren), arising subsequent to the original decree." McEachern, 605 So.2d at 813 (citing Cox v. Moulds, 490 So.2d 866, 869 (Miss. 1986) and Adams v. Adams, 467 So.2d 211, 214 (Miss. 1985)). See also, McEwen v. McEwen, 631 So.2d 821, 823 (Miss. 1994). In addition, McEachern holds that a court cannot impose upon a father a standard of living for his children which is beyond his financial ability to provide. McEachern, 605 So.2d at 813. Also regarding the modification of child support, this Court in Morris v. Morris, 541 So.2d 1040 (Miss. 1989) stated:
To justify changing or modifying the divorce decree there must have been a material or substantial change in the circumstances of the parties. The material or substantial change is relative to only the after-arising circumstances of the parties following the original decree.
Morris, 541 So.2d at 1042-43 (citing Shaeffer v. Shaeffer, 370 So.2d 240, 242 (Miss. 1979)).
As previously mentioned, the changes in circumstances affecting the modification of a child support agreement could be that of the father, the mother, or the children. See McEachern, 605 So.2d at 813. First, as to the children, the testimony at the hearing on this matter did not offer very much evidence that there had been a material or substantial change in the needs of the children. In fact, the only evidence regarding the children's expenses pertained to the children's health insurance and also to some dancing and piano lessons. While it is true that some 29 months had passed between the entry of the *1198 original divorce decree in this case and the hearing on the modification of child support, the record does not reveal that the needs and expenses relating to the children had increased in any substantial manner over these months. The original settlement agreement entered into by the parties provided that "[t]he children are covered dependents under wife's [Stacy's] group insurance and wife [Stacy] agrees to maintain said insurance for the children." Thus, Stacy was required to provide health insurance coverage for the two girls and she testified that she was doing so. However, Stacy is no longer providing this insurance coverage through her employer; she has taken out another health policy to cover the children. Stacy testified that health insurance through her employer would cost $424.44 per month and the policy that she has now obtained for the children costs only $187.57 per month. Thus, by providing coverage under this new policy Stacy saves $236.87 per month or $2,842.44 annually. The only other direct evidence relating to the children's expenses concerns piano and dance lessons. Morris admitted that he wanted his two daughters to take these lessons. The record indicates that the piano lessons cost $90.00 per month, but does not reveal the cost of the dance lessons.
Evidence presented at the hearing concerning Stacy's financial situation was that she was employed by the Tupelo Public Schools as speech language pathologist. Stacy had been teaching for fourteen and one-half years at the time of the hearing. Stacy testified that she "thinks" her gross salary from her employment is $2,200.00 per month and her net income is $1,650.00. There was no evidence of any increase or decrease in Stacy's income since the entry of the divorce decree. However, when she remarried on September 11, 1992, her alimony payments of $1,667.00 per month were terminated. She and her new husband live in a recently purchased home which costs $148,000.00. Stacy said that her new husband actually had purchased the home before they were married. As discussed above, Stacy is required under the original decree to maintain health insurance on the two children and she is presently doing so. Stacy pays $187.57 per month for this insurance which is a substantial decrease from the $424.44 she would have to pay if the insurance was provided through her employment. Finally, while Stacy's "income" may have decreased by termination of her alimony payments, she also reduced her monthly expenses upon her remarriage and sale of the house by no longer having to pay off the first deed of trust.
The person with the most substantial change in financial circumstances since the entry of the original decree is Morris. Morris has been a practicing psychologist in Tupelo since 1980. Morris testified that in 1991 he reported a gross income of $133,987.00. However, as part of that amount Morris earned $55,406.00 from Disability Determination Services (DDS). Also included was income from Charter Lakeside Hospital. DDS would send some of their claimants to him for evaluations. He would then perform the evaluation and send DDS a report. Morris also had a contract with Charter Lakeside Hospital in which he was paid $1,000.00 per month to do three assessments for them. However, Morris was notified by Charter Lakeside Hospital that effective August 1, 1992, they were terminating their relationship with him in part because of bankruptcy and a reformation. Morris was also notified in the latter part of August, 1992, that DDS had deleted his name from their list of examiners and that he would no longer be doing any work for them. He said that his working relationship with DDS was terminated because of a difference concerning protocol. Morris estimated that since he lost the income from DDS and Charter Lakeside Hospital that his gross income has dropped to around $5,000.00 per month. Morris also estimated that his total gross income for 1992 would be approximately $110,000.00 to $120,000.00. However, this amount includes $66,000.00 from DDS and $8,700.00 from Charter Lakeside Hospital that he will no longer receive in future years. To try to offset this dramatic loss in income Morris testified that he is now trying to put more effort into the individual part of his practice, but that he has not been able to replace this lost income.
Besides the evidence regarding the reduction in his income, Morris also produced a substantial amount of evidence relating to *1199 the expenses that he was paying at the time of the hearing. Morris testified that the monthly cost of operating his office is $2,694.41. Morris no longer has a regular secretary. His present wife, Sandy, is now performing these duties without compensation. He is also having to make payments on his home, which cost approximately $120,000.00. Also, while he was married to Stacy, he and Stacy owned three pieces of property (other than their home) as tenants in common. These properties were located in North Cedar Heights, at Box Chapel in Corinth, and in Pickwick, Tennessee. The original decree ordered Morris to make all necessary payments regarding these properties. At the time of this hearing the mortgage debt on the Pickwick property was approximately $19,800.00. This required Morris to make a $1,700.00 payment every six months. He was also required to pay some $360.00 in taxes on this property each year. (As will be discussed momentarily, the other two properties had been sold at the time of this hearing.) In addition, Morris carries life insurance policies on himself and his two daughters. The premiums on these policies are $150 for each of the girls ($300.00 total) per quarter and $121.00 on himself each quarter. He owes the Bank of New Albany $3,000.00. He owes his mother $2,000.00 for some merchandise that he purchased from her store. Morris testified that the total outstanding balance on the car that he is driving is $10,200.00 and that he pays $321.00 per month on this note. Also, as part of the original settlement Morris was required to transfer title to a Cadillac automobile to Stacy, to continue to make payments on this car, and to hold Stacy harmless on this debt. At the time of this hearing the outstanding balance on the Cadillac was $4,128.50 for which Morris made payments of $410.00 or $412.00 each month.
While the evidence presented at the hearing revealed that Morris had experienced a substantial reduction in his income since the entry of the original order, he had likewise reduced his expenses since that time. The evidence of Morris' reduced expenses includes the fact that since Stacy's remarriage on September 11, 1992, he is no longer obligated to make alimony payments to her which in the amount of $1,667.00 per month. Likewise, since the sale of the home, he is no longer required to pay the second and third deeds of trust. As mentioned previously, two of the three properties that Morris and Stacy owned as tenants in common had been sold at the time of the hearing. Therefore, Morris is no longer obligated to pay the mortgages and taxes on these two properties. However, Morris testified that he had to borrow $5,500.00 in order to sell one of the properties which was sold at a loss. Morris also said that while on paper the sale of the other property showed a gain, because of the accounting for depreciation there was no gain in reality. Finally, Morris had sold a piece of property that he owned on West Main Street. He realized about $10,000.00 or $15,000.00 in equity from the sale of this property, however, he said that all of this money was used to pay off debts incurred while he was still married to Stacy.
In his opinion, the chancellor held that the provisions in the parties' settlement agreement entered into at the time of the divorce which provided that the remarriage of Stacy or the sale of the house would constitute a material change in circumstances affecting child support were not binding on the court. He did, however, find that a material and substantial change in circumstances had in fact occurred. Briefly summarized, the material changes that had taken place since the entry of the original decree included Stacy no longer receiving alimony payments, however, she was no longer obligated to pay the first deed of trust on the home since it had been sold. The evidence revealed that Morris had experienced a drastic reduction in his income, but had also reduced the amount of expenses he was required to pay. In his opinion, the chancellor took note of Morris' reduction in income, but still concluded that an increase in child support was warranted stating:
In light of the fact that even though it would appear that the defendant [Morris] has in fact had a reduction in the amount of gross income that is available to him, and taking in light the fact that certain debts that he was obligated to pay have in fact been paid and discharged, I'm of the opinion that child support should be increased *1200 from the sum of $200.00 per month per child to the sum of $500.00 per month per child, beginning January 1, 1993, pending further orders of the Court.
One area of great concern is the lack of evidence pertaining to the needs and expenses of the children involved in the instant case. The evidence of such needs and expenses related only to the children's insurance and their dance and piano lessons. However, the most troubling aspect of the evidence (or lack of evidence) in this case concerns the changes in Morris' income since the entry of the original decree. It is very difficult to determine precisely the amount of Morris' income. To subtract the income lost from DDS and Charter Lakeside Hospital from his 1992 income would not give an accurate view of his present income because he stated that he will try to offset this lost income by emphasizing his individual practice. Likewise, an accurate depiction of Morris' income cannot be obtained by simply adopting his 1992 income for there is no indication of how much of this lost income Morris will be able to replace in the future. The most direct evidence of Morris' income at the time of the hearing is his statement that since his decrease in income, his income has dropped to around $5,000.00 per month gross. This problem is compounded by the fact that Morris lost both of these sources of income so close to the time of the modification hearing.[2]

C. Conclusion.
The parties agreed that remarriage of the wife or the sale of the home would constitute change of circumstances affecting child support. Not relying on the agreement, the chancellor found a change of circumstances on the facts. However, the record appears incomplete on the financial needs of the children and this Court is not in a position to determine whether the increase of child support was an abuse of discretion or not. This issue should be considered anew by the chancellor, and is therefore, remanded. At the rehearing of this case, the record must be more fully developed concerning both the needs of the children and also Morris' present income. The trial court should consider any amounts found to be excessive which have been paid under the amended decree in fashioning an equitable future decree. Stacy should not be required to reimburse Morris for any payments made to her since the entry of the judgment to increase child support obligation.

IV. ABSENT PROOF OF NEED, CAN A CHANCELLOR ORDER A 10% SUPPORT SURCHARGE ON ALL INCOME OVER $50,000, UNLIMITED IN AMOUNT, WITHOUT "A WRITTEN FINDING IN THE RECORD AS TO WHETHER OR NOT THE APPLICATION OF THE GUIDELINES ESTABLISHED IN [Sec. 43-19-101] IS REASONABLE."

A. Parties' Contentions.
Morris contends that the chancellor was in error in the instant case when he ordered Morris to pay ten percent (10%) of his adjusted gross income, as defined by the Internal Revenue Code, exceeding $50,000.00 as child support. Morris argues that this holding presumes that the expenses of the children are co-extensive with this surcharge. Finally, Morris contends that to order him to pay child support in excess of the reasonable needs of his children would be the equivalent of awarding Stacy tax-free alimony. Stacy counters these arguments stating that the chancellor acted in accordance with the directives issued by the Mississippi Supreme Court and that the chancellor's decision should be upheld.

B. Applicable Law.
In the final decree, the chancellor, in part, held:
Within thirty (30) days after the end of each calendar year, the Defendant [Morris] shall be required to furnish to the Plaintiff [Stacy] the amount of his gross earnings and operating costs. In any year wherein *1201 his adjusted gross income, as defined under the Internal Revenue Code, exceeds $50,000.00, he shall be required to pay an addition [sic] sum to the Plaintiff [Stacy] of 10 percent of such sum that exceeds the $50,000.00 adjusted gross income.[3]
Provisions which automatically account for the increased needs and expenses of children are looked upon with favor in this state. In Wing v. Wing, 549 So.2d 944, 947 (Miss. 1989), this Court said, "Strong public policy calls for provision for increased financial needs of children without additional litigation, incurring attorney's fees, court congestion and delay, and emotional trauma." See McNeil v. McNeil, 607 So.2d 1192, 1195-97 (Miss. 1992); Tedford v. Dempsey, 437 So.2d at 419-20.
The situation in the case at bar is somewhat akin to that before this Court in Gillespie v. Gillespie, 594 So.2d 620 (Miss. 1992). In Gillespie, the chancellor ordered that the father's child support payments be increased from $250.00 per month to $300.00 upon the child's beginning kindergarten. Gillespie, 594 So.2d at 623. This Court noted that this provision could have been either one of two things: (1) an anticipated modification or (2) an escalation clause. Id. The Court held that the provision in that case could not be upheld under either label. Id. at 623-24. Likewise, if the provision in the instant case is an anticipated modification then it should not be allowed to stand because there can be no modification of a child support order unless there has been "a substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified." Id. at 623 (citing Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss. 1991); Clark v. Myrick, 523 So.2d 79, 82 (Miss. 1988); Adams v. Adams, 467 So.2d 211, 214 (Miss. 1985)). There is no evidence that Morris making over $50,000.00 adjusted gross income, as defined by the Internal Revenue Code, would automatically constitute a material change in circumstances. Also, there is no evidence that the children's expenses correlate with their father's income or that the needs and expenses of the children will increase by Morris making above this amount.
Regarding escalation clauses in child support awards, this Court in Tedford said, "the parties generally ought to be required to include escalation clauses tied to the parents' earnings or to the annual inflation rate or to some factored combination of the two." Tedford, 437 So.2d at 419. This Court further elaborated on this idea in Wing stating:

Tedford dictates that an escalation clause should be tied to: (1) the inflation rate, (2) the non-custodial parent's increase or decrease in income, (3) the child's expenses, and (4) the custodial parent's separate income. See also, Adams v. Adams, 467 So.2d 211, 215 (Miss. 1985). These factors channel the escalation clause to relate to the non-custodial parent's ability to pay and the needs of the child. Id. An automatic adjustment clause without regard to all of the above factors runs the risk of overemphasizing one side of the support equation. On the other hand, an increase in the [non-custodial] parent's income does not necessarily entitle the child to more support; nor does an income decrease necessarily signal inability to pay, as when the obligated parent has assets. H. Krause, Child Support in America-the Legal Prospective 24 (1981). (Emphasis added).
Wing, 549 So.2d at 947. Thus, should this provision be deemed an escalation clause, it would still be improper. The provision in the instant case relates only to the father's income. It in no way relates to the other important factors discussed in Wing such as the mother's separate income or the inflation rate. Also of vital importance, this provision seems to increase child support with no regard to the needs and expenses of the children. Thus, the chancellor overemphasized Morris' possible future income to the exclusion *1202 of the other factors which should also be considered in child support determinations.

C. Conclusion.
While the chancellor certainly had the authority and power to include an escalation clause in his order, by relying solely upon Morris' income and not including the other factors set forth above this Court holds that the chancellor was in error. Therefore, the portion of the chancellor's decision ordering Morris to pay ten percent (10%) of his adjusted gross income, as defined by the Internal Revenue Code, exceeding $50,000.00 as additional child support is reversed and rendered.

IV. FINAL ANALYSIS AND CONCLUSION.
On remand, the chancellor should consider the amount of child support in light of the present circumstances of the parties. Well over a year has passed since the hearing was held on this matter, thus, it would appear that enough time has passed that a more accurate determination of Morris' income could now be made. Also, this Court holds that the chancellor was in error in ordering Morris to pay additional child support in the amount of ten percent (10%) of his adjusted gross income, as defined by the Internal Revenue Code, exceeding $50,000.00 and that this provision should be reversed and rendered. On remand, the chancellor may include some type of escalation clause, however, he should tie it to all of the factors enumerated above.
REVERSED AND REMANDED IN PART. REVERSED AND RENDERED IN PART.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, and SMITH, JJ., concur.
McRAE, J., concurs in part, dissents in part with separate written opinion.
JAMES L. ROBERTS, Jr., J., not participating.
McRAE, Justice, concurring in part/dissenting in part:
I agree with the majority's reversal of the chancellor's decision to increase child support from $200.00 to $500.00 per month per child. Stacy failed to present any evidence whatsoever of a material change in circumstances on the part of the two daughters or the father such as to warrant a one hundred and fifty percent increase in Morris' support obligations. However, by not requiring Stacy to reimburse Morris for the excess support he has paid for more than a year, the majority only compounds the chancellor's error. Further, the decision offends our notions of due process and equal protection by finding the chancellor in error and selectively making the decision prospective to enable the woman to keep the money. Accordingly, I dissent from that part of the opinion.
The chancellor's decision to order increased child support was entered on March 11, 1993. Since that time, Morris has paid nearly $9,600.00 in additional child support. Now, this Court has found that the chancellor was manifestly in error in awarding the increase without any proof. Nevertheless, it allows a judgment to stand against Morris in the amount of $9,600.00. On June 29, 1994, this same Court reversed and rendered a $5 million judgment in a personal injury case because the majority found there was insufficient proof to establish liability. McGill v. Bradley, 1994 WL 287816, No. 91-KA-563, (Miss. June 30, 1994). However, in today's opinion, the majority states that "[t]his Court concludes that the holdings set forth in this opinion should have prospective application only. Stacy shall not be required to reimburse Morris for any payments made to her since the entry of the chancellor's decision to increase Morris' child support obligation." Having found no basis for the chancellor's decision, the majority now simply turns around and does the same thing it said the chancellor could not do: awards Stacy the continued use of the $9,600.00 it found she was not entitled to receive on behalf of the children.
The author of today's majority has written that "fairness dictates that any change in settled law should be made prospective in *1203 application." Tharp v. Bunge Corp., 641 So.2d 20 (Miss. 1994) (Prather, P.J., concurring in part, dissenting in part). See also, Gilmore v. Garrett, 582 So.2d 387, 399 (Miss. 1991) (Prather, P.J., dissenting). On its face, the opinion sets out no new rules of law. However, the award by this Court of a $9,600.00 judgment which it has just found to be without proof and manifestly erroneous represents a strange change in settled law. It is little wonder that so many attorneys and chancellors are suggesting that any decision should be appealed because one never knows, from week to week, what the mood of the Supreme Court might be. To apply this decision prospectively is patently unfair and an affront to our notions of equal protection and due process. It is a classic example of why we should not selectively apply the illfated doctrine of prospectivity. Who knows which way the judicial mood may swing? Accordingly, I dissent from the majority's disposition of this case.
NOTES
[1] Morris also filed a counterclaim requesting that the visitation schedule set forth in the original decree be modified. However, this claim is not subject to this appeal.
[2] In neither his opinion nor his decree does the chancellor address the applicability of the statutory guidelines set forth at Miss. Code Ann. § 43-19-101 (1972). However, with the lack of evidence pertaining to Morris' income, an accurate application of these guidelines would be impossible.
[3] Morris further argues that to require him, or any professional person, to provide his adjusted gross income within 30 days of the end of the calendar year would be practically impossible. Morris states, "Insurance claims filed in December would not be processed, and income reportable on forms 1099 or W-2 would not even be in hand."