HINKEBEIN, J.,
for the Court:
¶ 1. This appeal stems from an October 1997 judgment of modification and subsequent order denying a motion to amend that judgment whereby the Chancery Court of the First Judicial District of Hinds County assessed arrearages, attorney’s fees, and court costs to Marilee Luckett, now Marilee Southworth, [hereinafter Marilee], based on the non-payment of child support owed to her former husband, David Luckett [hereinafter David], pursuant to an automatic adjustment clause previously imposed by the court. Aggrieved by the chancellor’s decision, Marilee appeals citing the following assignment of error:
I. DID THE CHANCELLOR ERR IN ENFORCING THE AUTOMATIC ADJUSTMENT OF CHILD SUPPORT PAYMENTS?
Holding this assignment of error to be without merit, we affirm the judgment of the chancery court.
FACTS
¶2. Marilee and David were originally granted a divorce based upon irreconcilable differences in January 1982. In the property settlement agreement, the parties agreed that custody of their two young sons, Andrew and Zachary, would live with Marilee with David making monthly child support payments. However, they did so with the understanding that she would continue to reside with the children in Central Mississippi to facilitate visitation with their father. Therefore, when she chose to move out-of-state in 1991, Marilee and David revisited their prior arrangement and concluded, as reflected in a February 1993 modification order, that physical custody of the boys should be given to David. Within that order appeared the following language:
Marilee shall contribute to the support and maintenance of the minor children and David should be and hereby is awarded the sum of $80 per month to be paid by Mari-lee as support and maintenance for the minor children, which payment shall be made no later than the fifth day of each month commencing with the month of January, 1993. The total of $80 per month in child support does not comply with the support guidelines of Miss.Code Ann. § 43-19-1, et seq. (Supp.1992) as Marilee is unemployed. Upon Marilee’s becoming gainfully employed for at least 30 hours a week, she shall pay monthly child support in an amount consistent with the guidelines set forth in Miss.Code Ann. § 43-19-1, et seq. (Supp.1992).
*1216 As envisioned by the chancellor, Marilee eventually secured full-time employment in March of 1995 but failed to increase her support payments as required. Consequently, in March of 1997, David filed a petition for modification and contempt asking, among other things, that his ex-wife pay the arrear-ages due under this clause. From an adverse ruling of the Chancery Court of the First Judicial District of Hinds County, Mar-ilee appeals a judgment of $9,856 and the imposition of attorney’s fees and costs.
ANALYSIS
I. DID THE CHANCELLOR ERR IN ENFORCING THE AUTOMATIC ADJUSTMENT OF CHILD SUPPORT PAYMENTS?
¶ 3. From the outset we must note that both initially and in subsequent modifications to child support awards the chancellor is given substantial discretion and this Court will not reverse unless he or she was manifestly in error. Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994); Brace v. Brace, 687 So.2d 1199, 1202 (Miss.1996). See also, Cupit v. Cupit, 559 So.2d 1035, 1036-37 (Miss.1990) (noting that “process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding”). Our review, therefore, is significantly constrained.
¶ 4. With that in mind, our query regarding the enforceability of escalation clauses in this context necessarily commences with Tedford v. Dempsey, 437 So.2d 410 (Miss.1983). In Tedford the Mississippi Supreme Court affirmed a modification to child support payments delineated within the parties’ property settlement agreement, agreeing with the chancellor’s determination that material, yet foreseeable, changes in the parties’ circumstances had occurred in the interim. Ted-ford, 437 So.2d at 418. At first glance the opinion seems scarcely relevant to the instant case. However, in holding as they did, the justices noted that had the separation agreement contained an escalation clause to provide for increases in the children’s expenses and changes in the parties’ own earning capacities, much of the litigation leading to the appeal might have been avoided. Id. at 419. As the court wrote, “[i]n the child support provisions of their separation agreements, the parties generally ought to be required to include escalation clauses.... ” Id. Hence, the subsequent affirmations that such provisions “are looked upon with favor in this state.” Morris v. Stacy, 641 So.2d 1194, 1201 (Miss.1994). See also, McNeil v. McNeil, 607 So.2d 1192, 1195-97 (Miss.1992); Wing v. Wing, 549 So.2d 944, 947 (Miss.1989) (describing “strong public policy” against unnecessary litigation as basis for recommendation).
¶ 5. Despite these words of encouragement, however, the ensuing years have revealed more difficulties with the drafting and implementation of them than originally envisioned. More recent decisions, although continuing to cite Tedford, often hold the clauses unenforceable for either (1) lack of specificity or (2) failure to address all relevant circumstances. See Brace, 687 So.2d at 1202 (characterizing clause tied to ambiguous term uncertain); Morris, 641 So.2d at 1201 (reversing enforcement of clause tied only to non-custodial parent’s income). But see McNeil, 607 So.2d at 1197 (upholding cost-of-living provision which specified applicable consumer price index, ratio, base figure, frequency of adjustment, and effective date therefor). And it seems inconsequential whether the automatic adjustment arises, as it did in Tedford, from an agreement between the parties or is instituted by court order. See Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992) (refusing to enforce chancellor’s order that support payments increase to specified dollar amount); Wing, 549 So.2d at 948 (urging “bench and bar” to employ specificity in drafting these provisions). Therefore, we approach the questioned provision with a critical eye.
¶ 6. The parties, much as they did below, focus primarily on the issue of certainty and thus cite Brace v. Brace to the exclusion of nearly all other relevant case law. As previously noted, in the Bruce opinion our su *1217 preme court affirmed a chancellor’s refusal to enforce such a provision based upon its use of the dubious term “net pay”. Bruce, 687 So.2d at 1202. However, we do not believe definiteness to be the determinative issue here because Chancellor Wise was correct in her joint observations that (1) “everyone can count up to 30 hours per week,” and (2) “with the guidelines ... we can specifically go to the dollar amount that she should be paying. ...” The accuracy of the chancellor’s analysis is confirmed by her subsequent ability to precisely calculate 20% of Marilee’s adjusted gross income from the start date two years prior — the figure upon which the judgment at issue was ultimately based. It is clear, then, that unlike the circumstances presented in Bruce and other cases of similar import, an ordinary person reading the court’s order should have been able “to ascertain readily from the document itself exactly what conduct was prescribed ...” since the language used precludes any debate as to the original intent. Wing, 549 So.2d at 947. Therefore, in our assessment, the pertinent question here is whether the provision properly takes into account the potential changes in the parties’ respective financial situations.
¶ 7. Tedford’s initial statements, in particular the court’s declaration that, “[wjhat it ought to be tied to — inflation rate, father’s income, children’s expenses — will vary from case to case ...,” seemed to envision great latitude in the drafting of escalation clauses and the factors to be taken into account therein. Bedford, 437 So.2d at 420. However, again with the passage of time, this license seems to have been curtailed to some degree. More recent decisions, although citing Tedford, interpret the opinion as an edict that all escalation clauses “should be tied to (1) the inflation rate, (2) the non-custodial parent’s increase or decrease in income, (3) the child’s expenses, and (4) the custodial parent’s separate income.” Wing, 549 So.2d at 947; Morris, 641 So.2d at 1201; Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992) (emphasis added). And in Bruce, in its latest comment on this matter, our supreme court introduced these four factors, again listed in the conjunctive, with the phrase, “must be associated with.” Bruce, 687 So.2d at 1202 (emphasis added). Furthermore, the court has quoted the following passage from the Wing opinion on more than one occasion:
[tjhese. factors channel the escalation clause to relate to the non-custodial parent’s ability to pay and the needs of the child. An automatic adjustment clause without regard to all of the above factors runs the risk of overemphasizing one side of the support equation ... an increase in the [non-custodial] parent’s income does not necessarily entitle the child to more support; nor does an income decrease necessarily signal an inability to pay....
Wing, 549 So.2d at 947; Gillespie, 594 So.2d at 623; Morris, 641 So.2d at 1201. Two of these cases, Gillespie v. Gillespie and Morris v. Stacy, seem to be particularly pertinent in this instance.
¶ 8. In the Gillespie opinion, the chancellor ordered that the father’s child support payments be increased from $250 per month to $300 upon the child’s entering kindergarten. Gillespie, 594 So.2d at 623. The Mississippi Supreme Court later refused to uphold the provision as its trigger was tied to only one event which was not necessarily indicative of any substantial and material changes in the child’s needs. Id. As the court wrote, “this record is devoid of any evidence that kindergarten will cost more than what is now being spent.” Id. In other words, the Gillespie provision effectively failed to address any of the required elements.
¶ 9. The Morris clause also included such a trigger. In addition to the $1,000 monthly payment ordered by the chancellor, the noncustodial father was required, in any year wherein his adjusted gross income rose above $50,000, to pay an additional 10% of the excess. Morris, 641 So.2d at 1200. The court struck down this provision as well, reasoning that it overemphasized the father’s changing level of income because the figures employed bore no relation to the other proper considerations.- Id. at 1201 (citing passage from Wing quoted above).
*1218 ¶ 10. This case law may seem initially to suggest the appropriateness of reversal since here too we have a trigger— Marilee’s becoming gainfully employed. However, we cannot strike down the chancellor’s use of such a mechanism in this instance because the provision presented to us today is distinguishable from those reviewed in both Gillespie and Morris. First, unlike a child’s enrollment in school, a noncustodial parent’s unprecedented procurement of full-time employment is exceedingly suggestive of altered circumstances. Second, the impetus here is dependent upon the sheer existence, not the rise and fall, of Marilee’s income. Rather than effectively, yet inappropriately, awarding alimony or otherwise enriching David at her expense, the provision is actually closer akin to a temporary forbearance as it relieves Marilee of her incontrovertible responsibility toward her children during her idleness. And most importantly, the award is calculated using a statutorily defined percentage (20%) of her adjusted gross income rather than one chosen randomly. The guidelines delineated in § 43-19-101 create a rebuttable presumption as to the appropriateness of such a computation. Jellenc v. Jellenc, 567 So.2d 847, 848 (Miss.1990); Smith v. Smith, 585 So.2d 750, 753 (Miss.1991). To that end, our supreme court has held that the percentages described therein are to “apply unless the judicial or administrative body awarding' or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular ease as determined under the criteria specified in Section 43-19-103.” Miss.Code Ann. § 43-19-101(2). We therefore must surmise that in crafting these standards our legislature has given consideration to such inherently unstable factors as the children’s needs, the parent’s respective financial resources, and economic realities such as inflation.
¶ 11. It is clear that in February 1993 Chancellor Wise determined that these guidelines constituted an appropriate amount of child support based on the children’s then-existing needs and David’s ability to provide for them. The only reason, as properly stated in the questioned clause, that she did not order Marilee to begin paying 20% of her adjusted gross income immediately was Mar-ilee’s joblessness. We therefore, cannot, in good conscience, invalidate the chancellor’s use of Marilee’s subsequent employment to trigger an award which was presumptively appropriate from the outset. This assignment of error is without merit.
¶ 12. THE JUDGMENT OF THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., THOMAS, P.J., and COLEMAN, DIAZ, KING and PAYNE, JJ., concur.
McMILLIN, P.J., concurs in part and dissents in part with separate written opinion joined by HERRING and SOUTHWICK, JJ.