566 So.2d 214 (1990)
Judith Ann WEBSTER (Roberts)
v.
Steven Douglas WEBSTER.
No. 89-CA-0533.
Supreme Court of Mississippi.
August 29, 1990.
Henry Palmer, Palmer, Wright & Williamson, Meridian, for appellant.
J. Richard Barry, Bourdeaux & Jones, Meridian, for appellee.
En banc.
ROBERTSON, Justice, for the Court.

I.
Today's appeal asks that we construe the housing and support provisions of a property settlement agreement incorporated into a final judgment of divorce. Three and a half years after the divorce the wife married anew and took the children to Batesville. The ex-husband then purchased his former wife's interest in the previously jointly-owned residence and now says his due has been done insofar as housing for his children may be concerned. The parties have given us a chancery court approved text they say provides for these eventualities, and we will do the best with it we can.

II.
Judith Ann Webster (Roberts) and Steven Douglas Webster were married on February 16, 1974. During the course of their marriage they had two children, Stephanie Ann Webster, born August 13, 1980, and Daniel Ross Webster, born March 7, 1982.
On December 27, 1984, the Chancery Court of Lauderdale County, Mississippi, adjudged that Judith and Steven were divorced, *215 on grounds of irreconcilable differences. Miss. Code Ann. § 93-5-2 (Supp. 1984). At the time the parties presented to the court a settlement agreement they had drafted, with the assistance of counsel, and approved and executed. That agreement became effectively incorporated into the judgment of divorce. Switzer v. Switzer, 460 So.2d 843, 846 (Miss. 1984).
At the time of the divorce the parties jointly owned a residence in Meridian. The home was subject to a first mortgage held by Deposit Guaranty Mortgage Company. The judgment of divorce made alternative provisions respecting the residence and Steven's housing obligations in varying eventualities. Interpretation and enforcement of these provisions were central to the proceedings below which took place between December 7, 1988, and February 14, 1989, and have distilled today's dispute to but two questions presented: (a) whether Judith's sale of her interest in the home to Steven constituted a "sale" of the residence within the meaning of the judgment of divorce and (b) what effect should be given Judith's remarriage and removal of the children to Batesville.
The Chancery Court considered the questions and held Steven's housing obligations extinguished. Judith now appeals to this Court.

III.
This is hardly the first time citizens and their lawyers have been less than artful in providing for the governance of their future legal relationship. Repeated drafting inadequacies have produced a whole jurisprudence of textual interpretation. We are bound by what the parties have said, and by what the Court has ordered, provided only that we read the entire settlement agreement/divorce judgment and in the best light possible, attributing to its provisions the most coherent and reasonable scheme they may yield. Newell v. Hinton, 556 So.2d 1037, 1042 (Miss. 1990); Switzer v. Switzer, 460 So.2d 843, 846 (Miss. 1984); Roberts v. Roberts, 381 So.2d 1333, 1335 (Miss. 1980). We accept that the agreement was meant to make sense. The Chancery Court in 1984 approved it on that premise. But make no mistake about it, we do not rewrite parties' agreements for them. We may not provide through the ruse of interpretation that not directly or impliedly a part of the text we interpret. Estate of Hensley v. Estate of Hensley, 524 So.2d 325, 328 (Miss. 1988).
Accepting that our referent is the entire agreement, we find but three parts of its text shedding light on today's questions:
2. Wife shall have sole use and occupancy of the house of the parties. Husband agrees to pay $409.00 per month to Deposit Guaranty Mortgage Company in payment for mortgage, taxes and insurance on the residence of the parties located 3403 32nd Avenue, Meridian, Mississippi. These payments will continue until the residence is sold or until the wife remarries. If the wife is to remarry, the payments will end three months after the date of said remarriage.
2(g). In the event the parties sell the residence mentioned hereinabove, the husband will continue to pay $350.00 per month toward the housing expenses of the two minor children. Said payments shall be made directly to the wife to be used as she sees fit for the provision of said housing.
3. In the event that the wife should remarry and decide to retain possession of the residence of the parties, in accordance with paragraph 2, all payments on mortgage at Deposit Guaranty Mortgage Company will cease three months after the date of marriage. Husband thereby agrees to pay $250.00 per month toward the housing expense of the two minor children of the parties for that period of time that said children live with the wife in said residence or until the youngest child still living with the wife reaches the age of eighteen years. Three months from the date of the wife's remarriage, all responsibilities for effecting repairs, maintenance, etc. as specified above in paragraph 2 will become the responsibility of the wife.

*216 IV.
Our review is de novo. Where the question before us is essentially one of interpretation of a legal text, we have heretofore observed
The judicial task is to view the terms of the document, find their legal meaning, and adjudge their enforceability vel non. The familiar manifest error/substantial evidence rules have no application to our appellate review of such questions.
Busching v. Griffin, 542 So.2d 860, 863 (Miss. 1989); see also Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss. 1990); Cole v. National Life Insurance Co., 549 So.2d 1301, 1303 (Miss. 1989); UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc. 525 So.2d 746, 754 (Miss. 1987).

V.
On September 17, 1988, Judith conveyed her interest in the residence and the lot on which it lay to Steven, who paid in return $2,700.00 and assumed the outstanding balance of the first mortgage loan. Our question is whether this was a sale of the residence within the meaning of the agreement. The agreement ab initio contemplated that following the divorce Judith would remain in the former marital residence with the children. So long as she did so, the agreement directed that Steven would make the monthly mortgage payments, plus taxes and insurance. These monthly payments were in the sum of $409.00.
Sensibly, the agreement contemplated the possibility that Judith and the children might cease to reside in the former marital residence. If that occurred, and without regard to the possibility of Judith's remarriage, paragraph 2(g) obligated Steven to pay $350.00 per month "toward the housing expenses of the two minor children." But the triggering provision activating this obligation does not extend to every possible circumstance of Judith's removal of herself and the children from the home. It is limited: "In the event the parties sell the residence mentioned hereinabove, ... ."
Was Judith's sale of her interest to Steven on September 17, 1988, a "sale" within the meaning of the agreement? Steven argues not, to the end that his housing support obligation terminates. The language of the agreement read in light of the objectively accessible facts counsel a contrary conclusion. For one thing, Steven's payments required by the event of sale appear not to contemplate Judith's housing but are designated as "toward the housing expenses of the two minor children." The language concentrates upon a circumstance where the children no longer live in the former marital residence, an eventuality which has come to pass. The children's need for housing continues, and it offends no principle of equity or fairness that Steven be required to provide financially for those needs after Judith's remarriage, nor that he may sensibly have undertaken to do so back at the time of the divorce.
Notwithstanding, Steven today points to the language "In the event the parties sell the residence," reads it restrictively, and says a sale to a third person is necessary to trigger his obligations under paragraph 2(g). Yet, seeking a coherent scheme from the entire agreement, we think it odd that he would have agreed to provide housing support for the children if the children ceased to live in the former marital residence because he sold it to third parties, but not where he personally purchased Judith's interest. Without doubt, had the parties provided sale to third persons as the triggering provision and had that provision been approved by the Chancery Court, we would enforce it. That is not the language used. Both Judith and Steven participated in the September 17, 1988, sale satisfying the "the parties" language of paragraph 2(g). The conveyance for a cash payment and mortgage assumption was a "sale." The law will not allow Steven, miffed by Judith's remarriage, to avoid his obligation to provide housing for his children. We are not saying this is what Steven intended when he purchased Judith's interest on September 17, 1988, but it certainly could have been his motivation, one which no court should countenance. We hold Steven's obligation to provide financially *217 for the housing expenses of his two minor children one that continues after September 17, 1988.

VI.
The second question concerns the effect of Judith's August 24, 1988, marriage to Tony Roberts and her subsequent move to Batesville, Mississippi. Must Steven now pay for "the housing expense of the two minor children" the sum of $350.00 per month under paragraph 2(g), or $250.00 per month under paragraph 3?
Our answer may only be found in the text, where the parties have agreed what happens to Steven's housing obligation in the event the house is sold, followed by details for what happens should Judith remarry. The problem is that there is no express provision that addresses both eventualities which have come to pass: sale of the house and Judith's remarriage.
Notwithstanding, the text of subparagraph 2(g) provides
In the event the parties sell the residence mentioned hereinabove, the husband will continue to pay $350.00 per month toward the housing expenses of the two minor children.
No qualification is placed upon this statement of obligation. On the other hand, in paragraph 3, which provides for the eventuality of Judith's remarriage, the reduced $250.00 monthly housing obligation is conditioned upon Judith "decid[ing] to retain possession of the residence." This she has not done. Nothing else in the text expressly or impliedly qualifies subparagraph 2(g)'s mandate.
Seen in the above light, we may only hold that, from and after September 17, 1988, Steven became obligated to pay to Judith the sum of $350.00 per month toward the housing expense of the two minor children.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, PITTMAN and BLASS, JJ., concur.
SULLIVAN and ANDERSON, JJ., dissent.