# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01526-SCT

*JEAN B. SPEED*

*v.*

*JOSEPH L. SPEED*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/1998 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES H. HERRING |
| | ROBERT W. LONG |
| ATTORNEY FOR APPELLEE: | LESLIE R. BROWN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 03/16/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/6/2000 |

## EN BANC.

## MILLS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This appeal arises from a judgment against Joseph L. Speed in favor of Jean B. Speed rendered by the Chancery Court of the First Judicial District of Hinds County, Mississippi. Ms. Speed filed a Complaint for Citation of Contempt against Mr. Speed alleging that he was in arrears in payment of alimony in the sum of $349,638. In response to the Complaint for Contempt, Mr. Speed filed a Motion for Summary Judgment asserting that the escalation clause in the property settlement agreement was void. Although Mr. Speed's Motion for Summary Judgment was denied and he was found in contempt, the chancellor found the escalation clause void and ultimately awarded Jean Speed a judgment in the sum of $111,229. Aggrieved by the chancellor's judgment, Ms. Speed appeals and assigns the following issues as error:

### ISSUES

**I. Whether the chancellor erred in ruling that an escalation clause contained in a separation and property agreement is void and unenforceable.**

**II. Whether the chancellor erred in ruling that Joseph Speed was entitled to credit for those sums paid by him over and above the $1,500 per month obligation from June, 1979, through October, 1989, together with interest calculated at the rate of 8% per annum.**

## FACTS

¶2. According to the record, the parties were divorced on June 20, 1979. A "Child Custody, Separation Agreement, Alimony Agreement and Property Settlement Agreement" was executed by both of the parties and was incorporated in the Final Decree of Divorce which was approved by the trial court. The agreement provided in pertinent part as follows:

> 6. The husband further agrees to pay unto the wife the sum of $3,000 per month alimony and child support, with the sum of $1,500 per month thereof being allocated as alimony, and the sum of $1,500 per month thereof being allocated as child support, which will continue until the children reach their majority of twenty-one (21) years, marry, drop out of school without the permission of both parents; or otherwise become self-supporting. *In addition to the foregoing said payments herein above provided shall increase or decrease directly in relation to the increases and the cost of living as determined by the U.S. Department of Commerce Consumers Cost of Living Index, to be adjusted annually. . . .*

(emphasis added).

¶3. Both parties agree that Mr. Speed, at the very least, made regular $1,500 alimony payments plus all costs of living increases to Ms. Speed in accordance with the terms of the Agreement, until November, 1987, when he discontinued cost of living increases and slightly reduced his monthly alimony payments. Mr. Speed stopped making alimony payments after October, 1989, because he testified that he was experiencing some financial difficulty. According to the testimony, Mr. Speed acknowledged that he owed Ms. Speed "some money" but that he just wanted "some equity and fairness." The evidence showed that in 1996 Mr. Speed had an adjusted gross income of $305,949, a house and 103 acre farm valued at $325,000 and owned other unmortgaged assets of a value in excess of $1,000,000. Both parties agree that the disputed payments are for periodic alimony in both form and substance.

¶4. The chancellor found that Mr. Speed was in contempt for failure to make required alimony payments, but that he never owed Ms. Speed monthly alimony payments in excess of $1,500 per month, notwithstanding the provisions of the Final Decree of Divorce and the Agreement, which contained an escalation clause tied solely to the Consumer Price Index. Mr. Speed's counterclaim to modify his monthly alimony payments was denied and dismissed by order of the trial court dated June 8, 1998. The chancellor later amended the ruling and gave Mr. Speed credit for any payments made by him "in excess of $1,500 per month from June, 1979 through October, 1989, together with interest at the rate of 8% per annum." In the trial court's last order dated September 15, 1998, Mr. Speed was given credit for monthly payments in excess of $1,500 per month from June 1, 1979 through October 1, 1989 plus accrued interest.

¶5. After taking into account these credits, the chancellor finally awarded Ms. Speed a judgment against Mr. Speed in the sum of $111,229 in unpaid alimony with interest at the legal rate. Ms. Speed appeals from the chancellor's ruling since she believes she was entitled to a judgment against Mr. Speed for delinquent alimony payments from June 1, 1979, until the date of the final judgment rendered by the trial court. Ms. Speed also claims an additional amount that would take into consideration the cost of living increases as required by the original Agreement executed by both parties, together with accrued interest at the rate of 8% per annum.

## DISCUSSION

¶6. Our general standard of review for an award of alimony is familiar and well-settled. Alimony awards are within the sound discretion of the chancellor. *McEachern v. McEachern*, 605 So.2d 809, 814 (Miss. 1992). As we stated in *Watson v. Watson*, 724 So.2d 350, 354 (Miss. 1998):

> Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule. *Stevison v. Woods*, 560 So.2d 176, 180 (Miss. 1990). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss. 1990). See also *Ferguson v. Ferguson*, 639 So.2d 921 (Miss. 1994); *Faries v. Faries*, 607 So.2d 1204, 1208 (Miss. 1992). In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." *Newsom v. Newsom*, 557 So.2d 511, 514 (Miss. 1990). See also *Dillon v. Dillon*, 498 So.2d 328, 329 (Miss. 1986). This is particularly true in areas of divorce, alimony and child support. *Tilley v. Tilley*, 610 So.2d 348, 351 (Miss. 1992); *Nichols v. Tedder*, 547 So.2d 766, 781 (Miss. 1989). The word "manifest", as defined in this context, means "unmistakable, clear, plain, or indisputable." Black's Law Dictionary 963 (6th ed.) 1990. *Magee v. Magee*, 661 So.2d at 1122 (Miss. 1995).
>
> * * *
>
> The award of periodic alimony arises from the duty of the husband to support his wife. *McDonald v. McDonald*, 683 So.2d 929, 931 (Miss.1996). "The husband is required to support his wife in the manner to which she has become accustomed, to the extent of his ability to pay." *Brennan v. Brennan*, 638 So.2d 1320, 1324 (Miss.1994).

*Watson*, 724 So.2d at 354 (quoting in part *Magee v. Magee*, 661 So.2d 1117, 1122 (Miss. 1995)). While the usual standard of review for periodic alimony is highly deferential, our standard of review in this case is de novo since we must determine what the settlement agreement required. *Weathersby v. Weathersby*, 693 So.2d, 1348, 1352 (Miss. 1997); *see also* **Webster v. Webster**, 566 So.2d 214, 216 (Miss.1990).

¶7. This action appears to be a case of first impression in Mississippi because it confronts for the first time whether a property settlement agreement that contains an escalation clause for periodic alimony payments is enforceable, as opposed to an escalation clause that deals with child support payments. While we have not directly addressed this question, other states such as Florida have approved alimony escalation clauses. *See, e.g.*, **Ferree v. Ferree**, 410 So.2d 974, 976 (Fla. Dist. Ct. App. 1982)(holding that the purpose of a cost of living adjustment was to guarantee the wife in future years the buying power of the original alimony award) *see also* 27B C.J.S. *Divorce* § 433 at 357-58 (1986).

¶8. Mr. Speed argues that the escalation clause in the agreement is void because of vagueness and the failure of the clause to consider relevant factors such as his ability to pay. Ms. Speed's position is that a settlement agreement entered into by consenting adults should be enforced since they were both represented by counsel and because the alimony escalation clause is tied to cost of living adjustments as determined by a recognized consumer price index, in this case the U.S. Department of Commerce Consumer Price Index. Ms. Speed further cites *Weathersby*, 693 So.2d at 1352, where we held that:

> In property and financial matters between the divorcing spouses themselves there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have

reached agreement and the chancery court has approved it, we ought to enforce it and take as dim a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts. ***Bell v. Bell***, 572 So.2d 841, 844 (Miss. 1990).

¶9. The record indicates that Mr. Speed presented no evidence that Mrs. Speed was guilty of fraud, mistake or overreaching. In fact, the testimony of Mr. Speed reveals that he was financially able to make the alimony payments, that he fully understood the agreement and voluntarily entered into the settlement after being fully advised by a lawyer. Mr. Speed knowingly discontinued all alimony payments to Ms. Speed in October, 1989, even though his lawyer advised that the overdue payment obligations might be enforced by a court in the future.

¶10. The chancellor considered Ms. Speed's argument and held as follows:

> The court believes from the evidence that the alimony provision in question clearly awards periodic alimony to Jean. As such, the alimony should only have been modified by order of the court or by remarriage or death of a party. The rule is well established that "periodic alimony may be modified by increasing, decreasing or terminating the award . . . only upon order of the court". ***Armstrong v. Armstrong***, 618 So.2d 1278, 1281 (Miss. 1993). The court finds, then, that Joe never owed Jean alimony in any greater amount than $1,500 per month and that he is entitled to credit for those sums paid over and above this obligation from July, 1987 through October, 1989, together with interest calculated at the rate of 8% per annum.

¶11. Regarding escalation clauses in *child support* awards, we said in ***Tedford v. Dempsey***, 437 So.2d 410, 419 (Miss. 1983), that "the parties generally ought to be required to include escalation clauses tied to the parent's earnings or to the annual inflation rate or to some factored combination of the two." We further elaborated on this idea in ***Wing v. Wing***, 549 So.2d 944 (Miss. 1989), holding that:

> ***Tedford*** dictates that an escalation clause should be tied to: (1) the inflation rate, (2) the non-custodial parent's increase or decrease in income, (3) the child's expenses, and (4) the custodial parent's separate income. See also ***Adams v. Adams***, 467 So.2d 21, 215 (Miss. 1985). These factors channel the escalation clause to relate to the non-custodial parent's ability to pay and the needs of the child. ***Id.*** An automatic adjustment clause without regard to all of the above factors runs the risk of over emphasizing one side of the support equation. On the other hand, an increase in the non-custodial parent's income does not necessarily entitle the child to more support; nor does an income decrease necessarily signal inability to pay, as when the obligated parent has assets. H. Krause, *Child Support in America - the Legal Perspective* 24 (1981).

***Wing***, 549 So.2d at 947.

¶12. Mr. Speed argued at trial, and the chancellor agreed, that using a singular factor such as the Consumer Price Index in an escalation clause for alimony could result in inequitable results. Just as in child support cases, the chancellor in the instant case held that enforcing an automatic adjustment clause for periodic alimony without regard to other relevant factors runs the risk of overemphasizing one side of the support equation. We disagree. In ***Wing***, the risk of overemphasizing one side of the support equation with escalation clauses was qualified: "Nothing in this decision should be interpreted as a retreat from our recognition that escalation clauses should be included in property settlement agreements." ***Wing***, 549 So.2d at 947.

¶13. Ms. Speed's invocation of *Weathersby* is on point. We held that: 1) a wife's periodic alimony could not be reinstated after it had been terminated on the basis of the wife's cohabitation without marriage with another man; 2) the "cohabitation clause" in the settlement agreement, which triggered the termination of such alimony payments based upon the wife's cohabitation with a man prior to her marriage, was enforceable; 3) the cohabitation clause in the settlement agreement did not deprive the Chancery Court of its authority to hear pleas for modification of alimony; and 4) that such a cohabitation clause was not against public policy. 693 So.2d at 1354. In the instant case, Mr. Speed attempts to distinguish *Weathersby* with our prior holding in *Armstrong*, 618 So.2d at 1281, where we said that alimony "[m]ay be modified . . . only upon order of the court." However, in *Weathersby* we held that the wife's plea was for reinstatement of alimony rather than modification since the wife had, by her own actions, forfeited her monthly alimony payments by cohabitation with a man in direct violation of the settlement agreement.

¶14. The same rationale applies in the present case. By a court-approved judgment, Mr. and Ms. Speed agreed to annual cost of living adjustments in the alimony payments. Mr. Speed abided by the agreement for ten years and then ceased payment of alimony to Ms. Speed completely, although he was certainly able to do so financially. According to the record, Mr. Speed filed several motions during that ten-year period to modify his alimony payments but was never able to bring them on for hearing because Ms. Speed continued changing lawyers and obtaining continuances. Although the reasons for a delay on the modification hearings may have been a result of Ms. Speed's biding her time until Mr. Speed accumulated more wealth, the fact remains that the property settlement agreement entered into by the Speeds and approved by the chancellor never infringed on another court of competent jurisdiction having the authority to modify the original property settlement or escalation clause. Mr. Speed assumed the risk of having to make the escalated payments at a later time since he willfully violated the agreement without seeking modification of alimony until August of 1986.

¶15. The right of the trial court to modify Mr. Speed's periodic alimony payments was not invaded. Mr. Speed filed a counterclaim to modify his monthly alimony payments, but the chancellor considered the merits and dismissed this counterclaim on June 8, 1998. No public policy was breached when the alimony escalation clause was originally agreed to and judicially approved. No evidence of fraud, mistake or overreaching was shown by Mr. Speed to have influenced the execution of the property settlement agreement by the parties, and the evidence shows that he was at all times able to comply with the terms of the settlement agreement.

¶16. Therefore, the escalation agreement is enforceable pursuant to our holdings in *Bell* and *Weathersby*. However, this does not preclude the chancellor from reconsidering whether equity demands that Mr. Speed's counterclaim for modification should be reconsidered. While the chancellor can not go behind the valid and enforceable escalation clause prior to Mr. Speed's original petition for modification of alimony, he certainly has the discretion to reconsider whether such petition had merit when it was filed.

¶17. Ms. Speed was entitled to a judgment against Mr. Speed for delinquent alimony payments from June 1, 1979, until the date of the final judgment rendered by the trial court. Since the chancellor credited Mr. Speed for amounts he paid in excess of $1500 per month from June, 1979 to October, 1989 based on the escalation clause being found void, Ms. Speed is also entitled to an additional amount representing the cost of living increases as required by the original property settlement agreement, together with accrued interest at the rate of eight percent per annum.

## CONCLUSION

¶18. Absent fraud, overreaching or mistake, escalation clauses in property agreements are enforceable even though the agreement may prove to be improvident for one party in the future. Therefore, we reverse and remand this case to the Chancery Court of Hinds County for further proceedings consistent with this opinion.

¶19. **REVERSED AND REMANDED**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**