GRIFFIS, P.J.,
for the Court:
¶ 1. Jessica Michelle Menard McLeod appeals the judgment of the Jackson County Chancery Court that denied her motion for contempt and modification of child support. She claims on appeal that: (1) her ex-husband, Anthony Scott McLeod, is responsible for the payment of one-half of private-school tuition under the terms of the parties’ settlement agreement; (2) the chancellor failed to hold Anthony in contempt for past-due medical expenses; and (3) the chancellor improperly denied an increase in monthly child support. We find that the judgment should be affirmed in part, reversed and rendered in part, and reversed and remanded for further proceedings consistent with this opinion.
FACTS
¶ 2. On July 8, 2005, Jessica and Anthony were granted a divorced based on irreconcilable differences. Their judgment of divorce included an executed child custody, child support, and property-settlement agreement, which gave Jessica sole legal and physical custody of their minor daughter. Anthony was ordered to pay Jessica $350 per month in child support.
¶ 3. Jessica filed a motion for contempt and modification of child support. On February 13, 2009, Anthony was held in contempt for his failure to pay child support, but Jessica’s request for an increase in child support was denied.
¶4. Jessica filed a second motion for contempt and modification on October 15, 2009. This time, she alleged that Anthony was in contempt for harassing the child’s medical providers; for failing to provide complete tax returns; and for failing to pay his share of the child’s medical expenses, educational expenses, and extracurricular activities. Jessica requested, under Mississippi Rule of Civil Procedure Rule 60(b), that the chancellor set aside the order of February 13, 2009, to the extent that it denied an increase in child support because Anthony underestimated his monthly income. Anthony had testified that he made $11.66 per hour when his actual pay rate was $15.57 per hour.
¶ 5. The chancellor found that the term “tuition” as it was used in the parties’ agreement was ambiguous and that it referred to college tuition not private-school tuition. The chancellor held Anthony in contempt on only one issue — his failure to pay a $25 medical bill. Jessica’s request to increase the amount of child support was denied.
STANDARD OF REVIEW
¶ 6. “In domestic relations cases, [the appellate court’s] scope of review is limited by the substantial evidence/manifest error rule.” Samples v. Davis, 904 So.2d 1061, 1063-64 (¶ 9) (Miss.2004) (citing Jundoosing v. Jundoosing, 826 So.2d 85, 88 (¶ 10) (Miss.2002)). “[We] will not disturb the chancellor’s opinion when [it is] supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Id. at 1064 (¶ 9) (quoting Holloman v. *806 Holloman, 691 So.2d 897, 898 (Miss.1996)). Questions of law are reviewed de novo. Amiker v. Drugs for Less, Inc., 796 So.2d 942, 945 (¶ 7) (Miss.2000).
ANALYSIS

1. Whether Anthony is responsible for the payment of private-school tuition under the parties’ settlement agreement.

¶ 7. Jessica and Anthony’s property-settlement agreement contained the following paragraph, under the heading “Child Support”:
C. School and Extracurricular Expenses. Husband and Wife shall each be responsible for one-half (1/2) of all school and extracurricular expenses incurred by the minor child including but not limited to the cost of books, activity fees, lab fees, school uniforms, tuition, and sports equipment. Husband shall pay on August 1 and January 1 of each year, the sum of $150.00 toward! ] the cost of new clothes for the minor child.
¶ 8. Jessica’s motion for contempt alleged that, under this clause of the agreement, Anthony owed Jessica one-half of their daughter’s private-school tuition. Anthony responded that he intended the word “tuition” to refer only to college tuition. He testified that he could not afford to pay private-school tuition. He further stated that the parties had never contemplated that their daughter would attend private school. When the divorce was finalized in 2005, their daughter was enrolled in public school in Mobile, Alabama. She continued to attend public school in Pascagoula, Mississippi, until 2009.[1]
¶ 9. The chancellor noted that “[t]he minor child was attending public school at the time of the parties’ divorce and there was no indication that the child would not continue at public school. Only after the child was bullied did Jessica make the unilateral decision to enroll the child in private school.” Therefore, the chancellor concluded that the word “tuition” was “intended to mean college tuition for the minor child as the parties never contemplated sending the child to private school.”
¶ 10. The chancellor further found that, under the holdings in Southerland v. Southerland, 816 So.2d 1004 (Miss.2002) and Moses v. Moses, 879 So.2d 1043 (Miss.Ct.App.2004), private-school tuition is included in the statutory amount of child support. As Anthony was already paying the statutory amount, the chancellor held that she could not require Anthony to pay over and above that amount of child support to fund the child’s private-school tuition.
¶ 11. In Southerland, the chancellor found that, prior to the divorce, the parties had agreed to enroll their child in private school. Southerland, 816 So.2d at 1005-06 (¶ 8). The chancellor considered the private-school tuition as an extraordinary expense and awarded an amount greater than the statutory amount of child support. Id. The Mississippi Supreme Court held that private-school tuition is included in an award of child support under the statutory guidelines. Id. at 1006 (¶ 11).
¶ 12. Mississippi Code Annotated section 43-19-101(2) (Rev.2009) requires that the statutory amount of child support be awarded “unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in *807 [s]ection 43-19-103.” In Southerland, the supreme court held that the chancellor had failed to make the specific findings required to award an amount of child support over that which the statute allowed. Southerland, 816 So.2d at 1006 (¶ 9). Importantly, the supreme court stated: “While a father’s agreement prior to divorce to send a child to private school may be one legitimate factor to be considered, it is by itself an inadequate basis for an award of support in excess of that allowed by the statutory guidelines.” Id. at 1007 (¶13).
¶ 13. Similarly, in Moses, this Court stated that the father’s agreement to allow the child to attend private school prior to the divorce could not be the sole basis for an award of child support above the statutory amount without further specific findings by the chancellor. Moses, 879 So.2d at 1048-49 (¶¶ 14-15).
¶ 14. Here, the chancellor correctly cited these cases for the proposition that private-school tuition is an ordinary expense included in the statutory amount of child support. However, we find this case is distinguishable from Southerland and Moses. In both of those cases, the award of private-school tuition above the statutory amount of child support was reversed because it was based solely on the father’s agreement to enroll the child in private school prior to the divorce. Here, the agreement regarding tuition was made at the time of the divorce, and it was incorporated into the divorce decree.
¶ 15. Once a settlement agreement is approved by the chancellor and incorporated into the divorce decree, it becomes part of the decree for all legal intents and purposes. Switzer v. Switzer, 460 So.2d 843, 845-46 (Miss.1984). The supreme court has held that “when parties in a divorce proceeding have reached an agreement that a chancery court has approved, we will enforce it, absent fraud or overreaching, and we take a dim view of efforts to modify it just as we do when persons seek relief from improvident contracts.” Ivison v. Ivison, 762 So.2d 329, 334 (¶ 14) (Miss.2000). Thus, we must decide whether the parties’ agreement, which was approved by the chancellor and incorporated into the final divorce decree, encompasses the payment of private-school tuition.
¶ 16. Jessica argues that the chancellor applied an incorrect legal standard by considering parol evidence to conclude that the term “tuition” used in the property-settlement agreement did not apply to private-school tuition, but it was instead intended to refer to college expenses.
¶ 17. Our standard of review for this issue was set forth in Meek v. Warren, 726 So.2d 1292, 1293-94 (¶ 3) (Miss.Ct.App.1998), which states:
Because the resolution must be reached via the interpretation of a divorce judgment, our task is to view the terms of the document, find their legal meaning, and adjudge their enforceability. Webster v. Webster, 566 So.2d 214, 216 (Miss.1990). The familiar manifest error/substantial evidence rules have no application to such questions of law. Id. Consequently, our review is de novo, provided only that we read the entire settlement agreement/divorce judgment and in the best light possible, attributing to its provisions the most coherent and reasonable scheme they may yield. Id. However, we remain cognizant that our authority is circumscribed in that we may not provide through the pretense of interpretation that not directly or impliedly a part of the text we interpret. Id.
The supreme court has also warned that:
[T]he parties are bound by the language of the contract where a contract is unambiguous. The mere fact that the par *808 ties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law. When a contract is clear and unambiguous, this Court is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended.
Ivison, 762 So.2d at 335 (¶¶ 16-17) (quotations omitted).
¶ 18. In their divorce judgment, Jessica and Anthony agreed to this provision:
C. School and Extracurricular Expenses. Husband and Wife shall each be responsible for one-half (1/2) of all school and extracurricular expenses incurred by the minor child including but not limited to the cost of books, activity fees, lab fees, school uniforms, tuition, and sports equipment. Husband shall pay on August 1 and January 1 of each year, the sum of $150.00 toward! ] the cost of new clothes for the minor child.
¶ 19. The chancellor was incorrect to find that the word “tuition” is ambiguous. The paragraph is entitled “School and Extracurricular Expenses.” It states that the husband and wife are responsible for one-half of “all school and extracurricular expenses incurred by the minor child.” (Emphasis added). It then lists example expenses, including “tuition.” The word “tuition” immediately follows “school uniforms,” which, as Anthony conceded, would not be an expense incurred in college.
¶ 20. We find that the parties agreed to pay for one-half of all of their daughter’s school expenses, including her current private-school tuition. Accordingly, the judgment of the chancellor is reversed, and we render a decision requiring Anthony to pay for one-half of his daughter’s private-school tuition.

2. Whether the chancellor erred by failing to hold Anthony in contempt for past-due medical expenses.

¶ 21. Jessica claimed that Anthony owed her for four past due medical bills: (1) $32.50 to Dr. John Stoudenmire, the minor child’s psychologist; (2) $146.92 to Singing River Hospital; (3) $20 to the Medicine Shoppe; and (4) $25 to Bienville Orthopedics. The chancellor found that Jessica insisted on sending the minor child to Dr. Stoudenmire instead of a therapist within Anthony’s medical-insurance network. Accordingly, the chancellor did not require Anthony to pay Dr. Stoudenmire’s bill. Instead, the chancellor held that Anthony would be responsible for one-half of the bill should Jessica take the minor child to a therapist covered by Anthony’s insurance.
¶ 22. The chancellor found that there was a pending insurance claim in the amount owed Singing River Hospital; therefore, Anthony owed no amount until the claim had been resolved. Anthony presented a check that the chancellor accepted as proof that he paid the $20 owed to the Medicine Shoppe. Anthony testified that he never received the bill for $25 to Bienville Orthopedics. The chancellor found that Anthony owed Jessica the $25 due but that his failure to pay did not amount to wilful and contumacious contempt.
¶ 23. On appeal, Jessica claims that Anthony should be responsible for one-half of the cost to see Dr. Stoudenmire even though he is not covered by Anthony’s insurance. She also claims that she should not have to wait until the pending insurance claim is resolved before receiving Anthony’s payment for Singing River Hospital. She cites the relevant clause of their agreement, which states:
Husband shall provide medical and dental insurance, if available through his *809 place of employment, for the minor child of the parties. Husband and Wife shall each be responsible for one-half (1/2) of all medical, dental, ocular and pharmaceutical expenses of the minor child of the parties not covered by insurance. All such uncovered bills received by the Wife shall be submitted to the Husband for payment within thirty (30) days after receipt of the bills.
¶ 24. By its terms, the agreement requires that Anthony pay half of the uncovered bills received by the wife. Naturally, as the chancellor held, Jessica must wait until the insurance claim has been processed to receive Anthony’s payment so that the parties will know what amount is not covered by insurance.
¶25. Furthermore, the agreement requires Anthony to maintain medical insurance for the minor child, which he has done. Jessica now attempts to disregard Anthony’s insurance coverage and send the minor child to a therapist not covered under Anthony’s policy. The chancellor did not abuse her discretion in finding that Jessica must first take full advantage of the insurance before Anthony should be required to pay one-half of the expense. Accordingly, the chancellor’s decision on this issue is affirmed.

3. Whether the chancellor improperly denied an increase in the amount of monthly child support.

¶ 26. Jessica petitioned the chancellor for a modification in child support due to the increase in the cost of raising the minor child. Jessica claims that the chancellor improperly denied an increase in the amount of monthly child support because Anthony’s adjusted gross income on his 8.05 financial statement did not include his $598 monthly veterans benefit.
¶ 27. Our review of the record reveals that Anthony’s veteran benefit is, in fact, included on his 8.05 financial statement. The issue that remains unclear to us is whether the financial statement reflects Anthony’s current rate of pay from his employer. Because of this uncertainty, we remand this issue to the chancellor to determine whether Anthony’s increase in pay resulted in a change in circumstances necessary to increase the amount of his child support obligation.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE PARTIES.
LEE, C.J., IRVING, P.J., MYERS, BARNES, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.

. Jessica testified that their daughter was being bullied at the public school she attended in Pascagoula, so Jessica transferred her to a private school.