# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-01096-SCT

*WILLIAM ANDREW SHORT*

*v.*

*KATHRYN TAYLOR SHORT*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/29/2011 |
| TRIAL JUDGE: | HON. TALMADGE D. LITTLEJOHN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JENESSA CARTER HICKS |
| | DAVID EARL ROZIER, JR. |
| ATTORNEY FOR APPELLEE: | DEREK L. HALL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 02/06/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     William Andrew Short (Andy) and Kathryn Taylor Short were divorced in 2007. As part of the divorce judgment, the parties entered into a property, child-support, and child-custody agreement stipulating that Andy would pay child support in the amount of $50,000 per year until the child began kindergarten; thereafter, he would pay fifteen percent of his adjusted gross income (AGI), never to fall below $36,000 per year.

¶2.     In 2011, Kathryn filed a complaint for contempt, alleging that Andy had failed to make child-support payments. Andy filed a counter-complaint for custody and to modify child support. Andy alleged a material change in circumstances because of a significant

reduction in his adjusted gross income, requiring a new child-support calculation. The chancellor found that no material change in circumstances had occurred and ordered Andy to continue paying the minimum requirement of $36,000 per year in child support, pursuant to the original child-support agreement.

¶3. Andy appealed, arguing that the chancellor had disregarded statutory child-support guidelines, that the child-support provision in the parties' agreement violates Mississippi law, and that the chancellor had erred in calculating Andy's adjusted gross income. The Mississippi Court of Appeals affirmed, finding that the chancellor had considered all of the appropriate factors for modification and had supported his conclusions with findings of fact from the record. **Short v. Short**, No. 2011-CA-01096-COA, 2013 WL 329039, *2 (Miss. Ct. App. Jan. 29, 2013).

¶4. Andy filed a petition for writ of *certiorari*, stating that the Court of Appeals had failed to address his argument that the automatic child-support-calculation clause violates Mississippi law. Andy also claimed that the Court of Appeals failed to consider that the chancellor had wholly disregarded the statutory child-support guidelines, had erred by affirming the chancellor's finding that no material change in circumstances had occurred, and had overlooked the substantive error in the chancellor's calculation of Andy's adjusted gross income. We granted *certiorari*.

## STANDARD OF REVIEW

¶5. Factual findings made by the chancery court will not be disturbed if they are "supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an

2

erroneous legal standard." ***Biglane v. Under the Hill Corp.***, 949 So. 2d 9,14 (Miss. 2007) (quoting ***Cummings v. Benderman***, 681 So. 2d 97, 100 (Miss. 1996)).

¶6. Additionally, support agreements pursuant to an irreconcilable-differences divorce cannot be modified without a finding of a material change in circumstances, which was not foreseeable prior to the time of the judgment of divorce. ***Tingle v. Tingle***, 573 So. 2d 1389, 1391 (Miss. 1990).

## ANALYSIS

### I.    Whether the child-support obligation is modifiable.

¶7. Andy argues that the trial court found that the child-support obligation was not modifiable and states that he is forever bound to pay at least $3,000 per month in child support without regard for his or global circumstances. It is clear from the record that, during the chancellor's ruling on whether a material change in circumstances had occurred, he conducted a full analysis under the factors set forth in ***Pipkin v. Dolan***, 788 So. 2d 834 (Miss. Ct. App. 2001). However, the chancellor later focused on the mandatory language in the parties' agreement stipulating that Andy should never pay less than $3,000 per month in child support. Ultimately, the chancellor ruled that the child-support agreement would remain in effect based on his consideration of the factors, the best interest of the child, and Andy's agreement to be bound by the terms of the child-support agreement.

¶8. The chancellor's ruling gives the impression that the child-support agreement was unmodifiable because Andy had agreed to be bound by its terms. However, support obligations most certainly can be modified when there is a finding of a material change in

3

circumstances, which was not foreseeable at the time of the judgment of divorce.[1] ***Tingle v. Tingle***, 573 So. 2d 1389, 1391 (Miss. 1990). Therefore, the chancellor's ruling is reversed, and this case is remanded for a determination of whether a material change in circumstances has occurred.

II.     **Whether the chancellor erred in failing to consider the statutory guidelines for child support.**

¶9.     Andy asserts that the trial court disregarded the statutory guidelines for child support, constituting error. However, Andy fails to address that the child support was ordered pursuant to an agreement that Andy freely entered into. We consider (1) the importance of allowing parties to reach their own agreements during divorce settlements, and (2) the importance of holding parties to those agreements. ***Bell v. Bell***, 572 So. 2d 841, 844 (Miss. 1990). Further, when assessing child-support and custody agreements, it is crucial to ensure that the agreement is "adequate and sufficient" to provide ". . . for the care and maintenance of the children. . . ." ***Bell***, 572 So. 2d at 845 (citing Miss. Code Ann. § 93-5-2 (Rev. 2013)).

¶10.    Here, the parties were given the broad latitude prescribed to them in ***Bell***, and they used that latitude to form an agreement that they both presented to the chancellor as sufficient to support their child. Although, on the surface, it appears the amount of child support is indeed high, Andy freely consented to provide more support for his child than is recommended by the statutory guidelines. ***Stigler v. Stigler***, 48 So. 3d 547, 551 (Miss. Ct.

---

[1]The parties are allowed to create their own agreement, then with the chancellor's approval, the agreement is incorporated into the divorce judgment. A lapse of time will exist between when the parties made the agreement and when the agreement is incorporated into the divorce judgment. The chancellor should look to when the parties' agreement was finalized into the divorce judgment when determining if a material change in circumstances, which was not foreseeable at the time of the judgment of divorce, has occurred.

4

App. 2009) (Escalation clause did not violate *Tedford v. Dempsey* because ". . . parties may in fact agree on their own volition to do more than the law requires of them. Where such a valid agreement is made, it may be enforced just as any other contract."). *See Tedford v. Dempsey*, 437 So. 2d 410, 419 (Miss. 1983). The facts of this case support that the parties knowingly and willingly entered into an agreement that reflected *both* of their decisions as to what amount would be sufficient to support their child. Thus, Andy should be required to adhere to the agreement he freely entered into, which was deemed sufficient by the chancellor and was incorporated into the judgment of divorce, unless a material change in circumstances is proven. *Bell*, 572 So. 2d at 844-45; *see also Steiner v. Steiner*, 788 So. 2d 771, 776-77 (Miss. 2001) (Defendant was not relieved of making "high" alimony payments to his former wife just because he may have made a "bad deal."). This issue is without merit.

### III. Whether the child-support agreement is binding.

¶11. Andy requests that this Court address, on first impression, the enforceability of a de-escalation clause contained in a child-support agreement.

¶12. This Court's evolving interpretation on including escalation clauses in child-support agreements breaks ground in *Tedford v. Dempsey*, in which we explained that escalation clauses could save parties from the distress that accompanies support-modification proceedings. *Tedford*, 437 So. 2d at 419. In *Tedford*, the father was appealing the chancellor's finding that a material change in circumstances had occurred, warranting an increase in the amount of support. *Tedford*, 437 So. 2d at 418. This Court noted that the parties had, like many couples, ". . . been at each other's throat[s] . . . " from the beginning, and the inclusion of an escalation clause could have avoided the agonies of their current

5

litigation, because certain changes in circumstances generally can be reasonably anticipated. *Tedford*, 437 So. 2d at 418-19 (". . . anyone can reasonably anticipate: That children's expenses generally will increase as they get older, that the father and mother's earning *capacity* will generally increase from year to year, and that inflation will continue at some level and will partially affect both the children's expenses and the parents' earning capacity.").

¶13.    We take this opportunity to emphasize the following guidance in *Tedford*:

> In the child support provisions of their separation agreements, the parties generally ought to be required to include escalation clauses tied to the parents' earnings *or* to the annual inflation rate *or* to some factored combination of the two.  Though under the structure of the irreconcilable differences statute freedom of contract is exalted, there are limits.  The statute requires that the chancellor find that "the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children . . . .

*Tedford*, 437 So. 2d at 419 (citing Miss. Code Ann. § 93-5-2 (Supp. 1982) (emphasis added)).

¶14.    *Wing v. Wing* affirmed *Tedford*, and encouraged the use of escalation clauses.  *Wing v. Wing*, 549 So. 2d 944, 948 (Miss. 1989).  This Court in *Wing* stated that *Tedford*  requires that escalation clauses should be tied to the inflation rate, the noncustodial parent's increase or decrease in income, the child's expenses, and the custodial parent's separate income. *Wing*, 549 So. 2d at 947.  *Bruce v. Bruce* enforced the four factors stated in *Tedford* and *Wing*, but interpreted *Tedford* to mean that escalation clauses *must* be tied to all of the four factors.  *Bruce v. Bruce*, 687 So. 2d 1199, 1202 (Miss. 1996).

¶15.    For clarity, we overrule *Bruce*'s interpretation that escalation clauses *must* be tied to all four factors.  *Id*.  We focus on the original language in *Tedford* providing that escalation

6

clauses *should* be ". . . tied to the parents' earnings *or* to the annual inflation rate *or* to some factored combination of the two." ***Tedford***, 437 So. 2d at 419 (emphasis added). We affirm ***Wing*** in that the creation of escalation clauses should begin with a consideration of the inflation rate, the noncustodial parent's increase or decrease in income, the child's expenses, and the custodial parent's separate income. ***Wing***, 549 So. 2d at 947. However, we are not mandating that escalation clauses be specifically tied to all four factors. Foremost, escalation clauses must adequately and sufficiently provide for the custody and maintenance of the child pursuant to Mississippi Code Section 93-5-2. ***Tedford***, 437 So. 2d at 419.

¶16. The escalation clause in ***Wing*** was unenforceable because it lacked the specificity required for this Court to consider it a valid agreement. ***Wing***, 549 So. 2d at 948. This Court found that Russell Wing had established that, when reading the agreement, it could not be interpreted, and it was unclear what amount was owed, what year the clause became effective, and what consumer price index was to be used. ***Id.*** at 947.

¶17. Here, there is no question that the agreement is clear and measurable, and it adequately and sufficiently provided for the needs of the child. It is farfetched to assume that, during the formation of the agreement, the parents and the trial court were not considering the cost increases that would occur in raising a child and the fluctuations that could occur in the parents' salaries. By setting a percentage basis at fifteen percent of Andy's AGI, the agreement allots room for fluctuation in income, and by setting a minimum amount of $36,000 per year, the agreement reflects the minimum amount the parties agreed was sufficient to support the child. Lastly, the clause clearly is tied to Andy's earnings, and

7

depending on Andy's yearly income, the clause could be escalating or de-escalating. Currently, it is de-escalating, due to the decrease in his income.

¶18.    Under the specific facts of this case, the agreement is binding and comports with the guidelines in **Wing** and **Tedford**. **Wing**, 549 So. 2d at 947; **Tedford**, 437 So. 2d at 419. Nonetheless, this case is remanded for a determination of whether a material change in circumstances exists to warrant a modification of the agreement.

### IV.    Whether the chancellor committed a mathematical error when calculating Andy's income.

¶19.    The record reveals that the chancellor, while referencing the factors stipulated in **Pipkin v. Dolan**, 788 So. 2d 834 (Miss. Ct. App. 2001), considered the following issues during his determination: (1) the needs of the child in accordance with the mother's Uniform Chancery Court Rule 8.05 financial statement; (2) the increase in both parents' expenses in accordance with their Rule 8.05 financial statements; (3) inflation; (4) changes in both parties' incomes, the disparity between their incomes, and their earning capacities; (5) necessary living expenses of each party; (6) estimated amount of income taxes for each party; (7) no free use of any residence; and (8) that the parties created and agreed to the settlement agreement.

¶20.    During the chancellor's ruling on the parties' necessary living expenses, the chancellor stated that Andy's net monthly income was $12,719.96. The chancellor reached the amount of $12,719.96 by adding Andy's $3,200-per-month mortgage expense to his net monthly income of $8,519.96, which actually equates to $11,719.96. However, Andy's Rule 8.05 financial statement shows Andy's gross monthly income to be $11,680.73. Andy lists

8

deductions of federal income taxes amounting to $2,920.18 per month and nonreimbursed business expenses amounting to $481.49 per month, which totals $3,401.67 in deductions, leaving Andy with $8,279.06 in net monthly income. It is unclear how the chancellor reached $8,519.96 in net monthly income, or why the chancellor thought this net amount included the deduction of Andy's monthly mortgage. Nevertheless, it is clear from the record that the chancellor found that Andy's monthly mortgage payment of $3,200 per month was an unnecessary living expense, considering Andy's yearly income had fallen from $280,000 in 2007 to $98,000 in 2010.

¶21. The chancellor's calculation of Andy's monthly income was incorrect when compared to the Rule 8.05 financial statement contained in the record. Since the chancellor's determination that no material change in circumstances had arisen depended in part on Andy's monthly income, this judgment is reversed and the case remanded for a recalculation of Andy's monthly income in order for the trial court to correctly determine whether a material change in circumstances exists warranting modification of the agreement.

¶22. To be clear, we are reversing the chancellor's finding of no material change in circumstances and remanding the case for a new determination of whether a material change in circumstances has occurred and, if so, for an appropriate adjustment to child support. These determinations, in our view, first should be made at the trial-court level.

**CONCLUSION**

¶23. The chancellor erred in calculating Andy's monthly income during his determination of whether a material change in circumstances existed. Further, the chancellor's ruling erroneously indicated that the parties' child-support agreement was nonmodifiable.

9

Therefore, the judgments of both the Court of Appeals and the trial court are reversed and this case is remanded to the Chancery Court of Lee County for a recalculation of Andy's income and for a determination of whether a material change in circumstances exists to render the child-support agreement modifiable.

¶24.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶25.    The majority recognizes that the chancellor erred by adding Andy's mortgage payment (an expense) to his net monthly income of $8,519.96, calculating a net monthly income of $12,719.96 (which also includes a $1,000 mathematical error), and remands the case for the chancellor to recalculate and determine "whether a material change in circumstances exists to warrant modification of the agreement." Maj. Op. ¶ 18. However, even if the chancellor's calculations had been correct, he committed manifest error in finding "that no material change in circumstances had occurred." *See* Maj. Op. ¶ 2.

¶26.    As this Court has stated, "the changes in circumstances affecting the modification of a child support agreement could be that of the father, the mother, or the children." *Morris v. Stacy*, 641 So. 2d 1194, 1197 (Miss. 1994) (citing *McEachern v. McEachern*, 605 So. 2d 809, 813 (Miss. 1992)). While I do not contend that any financial change requires modification, the chancellor committed manifest error in failing to recognize that Andy's precipitous drop of $182,000 in income ($280,000 in 2007; $98,000 in 2010) represented a

material change in circumstances in this case. There is no evidence in the record that Andy's drastic drop in income was foreseeable at the time of the agreement, nor is there evidence of the majority's assumptions as to what the parties were considering at the time of the agreement. *See* Maj. Op. ¶10, 16. Very few in America (or the world) predicted a recession so severe that our President compared it to the Great Depression of the 1930s and 1940s.[2] The record is further devoid of facts that a minimum of $3,000-per-month[3] support for a seven-year-old is necessary or reasonable, or that it is related to the needs and expenses of Ethan. The only record evidence is Kathryn's Rule 8.05 financial statement (entered prior to the hearing), which lists Ethan's expenses at $925 per month.

¶27.    All agree that the support order was modifiable. However, the facts of this case compel me to conclude that the chancellor was manifestly wrong in determining that no material change in circumstances existed, absent required proof that $36,000 per year was related to the needs and expenses of the child.

---

[2]This economic downturn also has been referred to as the "Great Recession."

[3]According to the United States Census Bureau, from 2008 to 2012, the median household income in Mississippi was $38,882. *See* http://quickfacts.census.gov/ (last visited Feb. 4, 2014).