## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00873-COA

**JESSIE LOU PRICE**                                             **APPELLANT**

**v.**

**JOANTIONETTE "TONI" LISENBY-GRUNDY**                          **APPELLEE**

DATE OF JUDGMENT:            05/18/2017
TRIAL JUDGE:                 HON. JOHNNY LEE WILLIAMS
COURT FROM WHICH APPEALED:   MARION COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      CHARLES E. MILLER
ATTORNEYS FOR APPELLEE:      DANIEL MYERS WAIDE
                             STEVEN JOEL JOHNSON
NATURE OF THE CASE:          CIVIL - CUSTODY
DISPOSITION:                 REVERSED AND RENDERED - 04/16/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     On April 3, 2015, the Marion County Chancery Court awarded grandparent visitation to Toni Lisenby-Grundy, the paternal grandmother of the minor child. Slightly more than a year later, on April 20, 2016, the chancery court found the minor child's maternal grandmother, Jessie Price, in contempt for failing to abide by the visitation awarded under the April 2015 visitation order. Four months after that, Toni filed a second motion for contempt. On May 18, 2017, the chancery court found Jessie in contempt of its April 2016 contempt order based on the court's determination that Jessie willfully and obstinately failed to comply with the visitation directives in that order.

¶2.     On appeal, Jessie asserts that: (1) the May 18, 2017 contempt order is void because

the chancery court did not have jurisdiction over Toni's original action seeking visitation; and (2) the chancery court erred in finding her in contempt of its April 2016 contempt order. For the reasons addressed below, we find no merit in Jessie's first assignment of error, but we find that the chancery court's May 18, 2017 contempt order was not manifestly erroneous because the court's previously entered April 2016 contempt order was not sufficiently specific or clear enough to sustain a finding of contempt. We therefore reverse and render the May 18, 2017 contempt order, including all costs, fees, reimbursements, and attorney's fees awarded under that order.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. Terry Lisenby, Jr. and Theresa[1] Price are the parents of John,[2] born in 2004. The appellant, Jessie Lou Price, and her husband, Roy Price, are John's maternal grandparents. Jessie and Roy live in Mississippi. The appellee, Joantionette "Toni" Lisenby-Grundy, is John's paternal grandmother and lives in Indiana.

¶4. On March 16, 2010, Jessie and Roy Price filed a complaint for custody and for emergency relief in Marion County Chancery Court, cause number 2010-0099-GW, against Terry Lisenby Jr. and Theresa Price. In their sworn complaint seeking custody of John and his younger brother, the Prices aver that the children have lived with their mother, Theresa, since birth; that Theresa and her children have lived in many different apartments; and that they have also stayed, off and on, in the Prices' home. The Prices also averred that Terry

---

[1] In some pleadings contained in the record "Theresa" is spelled "Threasa." For consistency, we will use Theresa.

[2] An alias is used to protect the identity of the minor child.

2

Lisenby Jr. had not been in contact with Theresa, John, or the Prices since June 2009 and that his whereabouts were unknown. Additionally, the Prices averred that their daughter, Theresa, had "done drugs and drinks excessively."

¶5. The chancery court granted emergency custody of the minor children to their maternal grandparents, the Prices, on March 23, 2010. After having been served with summons by publication, Theresa filed her response to the complaint for custody and a motion for dissolution of the ex parte order on July 27, 2010. No other action was taken by the parties until the Prices filed a motion for a trial setting in February 2012.

¶6. On July 8, 2013, Toni, John's paternal grandmother, filed a complaint to establish third-party visitation in Marion County Chancery Court, cause number 2013-0983, naming John's maternal grandmother, Jessie Price, as the defendant. In her sworn complaint, Toni averred that she was John's paternal grandmother, that John was in Jessie's legal custody, and that Toni was entitled to reasonable and defined visitation with John.[3]

¶7. Theresa Price, John's mother, moved to consolidate the Prices' custody action with Toni's visitation action on the grounds that the matters concern both the welfare of the same minor children and the rights of the parties to these minor children; that similar circumstances and facts are at issue; and that consolidation would promote judicial efficiency. The record reflects that the chancery court ordered a joint hearing in both actions that took place on October 21, 2013. On January 17, 2014, the chancery court entered its order granting consolidation of the two actions and also appointing a guardian ad litem

---

[3] Toni also stated in her complaint that her son, Terry Lisenby Jr., was John's natural father and that he died on January 1, 2012.

3

(GAL) for the children. At no point did Theresa Price, or her mother, Jessie Price, raise any argument that the chancery court lacked jurisdiction over Toni's visitation action.

¶8. On April 3, 2015, the chancery court entered its final order granting visitation (the visitation order) in the consolidated proceeding. The visitation order was "agreed as to form" by the lawyers for Toni and Jessie and provided that the "[c]ourt has complete and plenary jurisdiction over the subject matter and the parties involved herein." The visitation order specifically provided for two visits to take place in Mississippi on April 3–10, 2015 and May 22–25, 2015, for a reasonable number of hours each day.

¶9. The order also provided for a visit at Christmas-time each year, one week in the summer, and "such other and additional visitation," with the times and dates to be coordinated between Toni and Jessie, and that the times should "occur under such circumstances as may be harmonious and proper and for the best interest of the child." In several other paragraphs in the visitation order the chancery court generally directed Toni and Jessie "to cooperate and work with each other for their mutual benefit and harmony" and "to communicate with each other in good faith, work with each other in good faith, and [do] all things as may be necessary and proper to effectuate [Toni's] visitation in a way and manner that is in the best interest of the minor child and [to] foster a heathy and beneficial relationship between the child and his family." Finally, the visitation order provided that "[i]n the event the parties cannot come to any agreement, this Court will intervene at the request of either party." No party appealed the April 2015 visitation order.

¶10. On November 17, 2015, Toni filed a complaint for contempt against Jessie. In her

4

contempt complaint, Toni acknowledged that she had "gotten to visit with her grandson [John] in April and May 2015, which went very well," but that Jessie had not cooperated with her for the summer visitation, in violation of the visitation order. Jessie's response also provided that Toni had visited John in Mississippi on two occasions and further provided that Jessie had "welcomed [Toni]" and cooked her meals. Jessie denied that she failed to cooperate with Toni about summer visitation.

¶11. At the contempt hearing held on April 20, 2016, Toni again acknowledged that the April and May 2015 visits "went real well," but then she described the difficulties she had with scheduling the summer visitation, which ultimately did not take place. Toni also testified that she did not pursue Christmas visitation because she did not want to get into a disagreement with Jessie. Toni acknowledged that she did not contact the GAL about these difficulties.

¶12. Jessie also testified at the hearing, and, like Toni, she testified that the April and May visits went well. She further testified that she tried to encourage John to go with Toni and her family during those visits, but he did not want to go with them because he did not know them. Regarding the summer visitation, Jessie testified that she thought Toni was coming for the visit and that she never told Toni not to come for the summer visitation.

¶13. The GAL testified at the hearing and expressed the concern that due to the length of time Toni and John had been separated,[4] it was too soon for John to go to Indiana for visitation; that there needed to be a reunification of the bond between John and Toni; and that

_____

[4] Toni testified that she and her family had been prevented from seeing John since he was about two-and-a-half years old.

it should be a gradual process.

¶14. In its order entered April 20, 2016 (the April 2016 contempt order), the chancery court found Jessie in contempt of the April 2015 visitation order and ordered Jessie to (1) pay $2,000 in attorney fees to Toni's attorney within thirty days; (2) post a surety bond in the amount of $2,000 conditioned on her adherence to the directions of the court for future visitation; (3) reimburse Toni for $400 in travel costs; (4) pay the GAL's fees for attending the April 14, 2016 contempt hearing; and (5) pay all court costs assessed. The chancery court also ordered that Jessie be incarcerated in the custody of the Marion County Sheriff Department for ten days, suspended upon the condition that she faithfully obeys and follows the directions of the court. Finally, the chancery court extended summer visitation to two weeks, and added one week during Christmas.

¶15. Regarding visitation, the April 2016 contempt order provided that "[t]he parties are directed to confer and communicate with each other in good faith to determine the exact dates for summer visitation." The order further provided that "both parties [are] to work together in good faith to make this visitation occur with the least amount of difficulty and confusion. In this regard, both parties are specifically directed to refrain from speaking in a negative, ill or derogatory manner about the other or the family of the other in front of [John]." Continuing, the order provided that "[b]oth parties shall conduct themselves in a mature and responsible manner and do everything they can to promote meaningful and positive visits as directed by this Court between [Toni and John]." Jessie moved for reconsideration or for a new trial, which the chancery court denied. Jessie did not appeal the

April 2016 contempt order.[5]

¶16. Approximately four months later, Toni filed another contempt motion based upon Jessie's alleged non-compliance with the April 2016 contempt order. Jessie responded, and a hearing on Toni's second contempt motion was held on May 16, 2017.

¶17. Toni testified at the hearing that Jessie did not cooperate in arranging summer visitation, and that the lawyers had to get involved to arrange for it to occur in June 2016. Toni planned on picking up John in Mississippi and taking him back to Indiana to meet his father's family. She testified that she, her sister (Sherry Adams), and her husband went to Jessie's home in Columbia, Mississippi to pick up John. According to Toni, when they arrived, Jessie started hollering, "get off my property . . . . I told you I'll meet you in Hattiesburg." Toni testified that she did not know about picking up John in Hattiesburg. She then testified that she called the police for assistance in getting John and that when the police officer arrived, he told her that they would need to "go back to court to settle this." After the police officer said this to her, Toni testified that she asked him to escort her, her husband, and her sister to the highway and they left without John.

¶18. According to Jessie, who also testified at the hearing, she had arranged for her sister to take John to Hattiesburg to meet the Grundys, but that they "showed up" at her home in Columbia and told her that they had called the police to help them get John. A confrontation

---

[5] On May 11, 2017, Jessie filed a motion for relief from the April 2016 contempt order. This action did not toll the time for appeal of that order. *See* M.R.C.P. 60 advisory committee's note ("Rule 60 motions filed more than ten days after entry of judgment do not toll the time period in which an appeal may be taken."). The record does not contain an order addressing Jessie's May 11, 2017 motion for relief from judgment.

between Theresa Price and Sherry Adams (Toni's sister) occurred, and Jessie testified that the police told the Grundys and Sherry Adams to leave.

¶19. During the hearing, the chancellor made it clear that his concern was whether Jessie had complied with the visitation directives in his April 2016 contempt order, not whether she had paid the fees or other costs that he had ordered. For example, he asked Jessie's attorney at the hearing, "How can I accept any promise that [Jessie] is going to make [about complying with visitation] when she has not complied with my previous order, not—forget the money, but on the visitation, just the visitation, not the money." At the close of the hearing, the chancellor found that Jessie had not made a good-faith effort to comply with the visitation directives in the April 2016 contempt order and that her failure to comply with visitation was willful and obstinate.

¶20. The court entered its second contempt order on May 18, 2017, re-imposing the $2,000 attorney fee award and the $400 travel costs award from its April 2016 contempt order. The court also ordered that Jessie be incarcerated until the monies were paid and until she had posted a $4,000 surety bond. Lastly, the court awarded Toni two weeks' summer visitation and ordered Jessie to pay Toni's future travel costs within fifteen-days' notice of those costs.

¶21. Jessie was taken into the custody of the Marion County Sheriff Department and incarcerated on May 18, 2017. Jessie's incarceration was suspended eight days later. In its order suspending incarceration, the court found that Jessie had paid all monies as directed by its previous contempt order, and the court also stated that it had been advised that summer visitation would take place from July 2 to July 16, 2017. The court suspended Jessie's

8

incarceration until July 18, 2017. If Jessie did not comply in any manner with the order of visitation scheduled from July 2 through July 16, however, the order provided that she would be re-incarcerated.

¶22. Jessie appealed the May 2017 contempt order, asserting that (1) the chancery court lacked jurisdiction to award visitation to Toni because John's mother had not been joined as a party in that action; and (2) the chancery court erred in finding Jessie in contempt of its April 2016 contempt order.

## II. STANDARD OF REVIEW

¶23. "We are bound to accept the findings of the chancellor unless he is manifestly wrong or there is clearly an abuse of discretion." *Lofton v. Lofton*, 176 So. 3d 1184, 1186 (¶5) (Miss. Ct. App. 2015) (internal quotation marks omitted). However, "when reviewing a chancellor's interpretation and application of the law, our standard of review is de novo." *Id.* (internal quotation marks omitted).

## III. LAW AND ANALYSIS

### A. The Jurisdictional Challenge to the April 3, 2015 Final Order Granting Visitation

¶24. Jessie asserts that the chancery court did not have jurisdiction to enter the April 2015 visitation order because Roy Price, John's custodial maternal grandfather, and Theresa Price, John's mother, were not joined and served with process under Rule 81 of the Mississippi Rules of Civil Procedure in Toni's original complaint seeking to establish grandparent visitation. Based on these assertions, Jessie then claims that all proceedings "flowing from this illegal award of visitation," including the chancery court's May 2017 contempt order,

9

are void. We reject this assignment of error because Jessie Price is barred by the doctrine of res judicata from making this jurisdictional challenge.

¶25. Jessie Price—not Theresa Price (John's mother)—is the party challenging the chancery court's jurisdiction to enter the April 2015 final visitation order. Indeed, *Theresa* Price moved to consolidate her parents' custody action against her with Toni's grandparent-visitation action. The chancery court granted that motion, requiring all the parties—Jessie and Roy Price, Theresa Price, and Toni Lisenby-Grundy—to appear before the court in the consolidated proceeding. The chancery court's final order granting visitation was entered in that proceeding.

¶26. At no time did Jessie challenge the court's jurisdiction as to Toni's original grandparent's visitation action; nor did Jessie appeal the April 3, 2015 visitation order.[6] The doctrine of res judicata, therefore, bars Jessie's attempt to challenge that order on jurisdictional grounds in this appeal. We find that *Burgess v. Williamson*, No. 2017-CA-00788-COA, 2018 WL 4705709 (Miss. Ct. App. Oct. 2, 2018), is instructive on this issue. In that case, Burgess appealed a May 9, 2017 contempt order against her based upon the court's determination that she failed to comply with a final judgment awarding custody and support entered on September 8, 2015. *Burgess*, 2018 WL 4705709, at *2 (¶¶11-12). Among other issues on appeal, Burgess asserted that the chancery court "erred in assuming jurisdiction" over the matter. *Id.* at *2 (¶12).

---

[6] We also observe that at no time did Theresa Price or Roy Price object to the chancery court's jurisdiction on any basis, and neither Roy nor Theresa Price appealed the April 2015 visitation order.

10

¶27.    We held that "if Burgess is trying to argue that the chancery court lacked jurisdiction to enter the original (September 8, 2015) final judgment awarding custody and support, her claim is barred by the doctrine of res judicata." *Id.* at *3 (¶17).  In so holding, we found that Burgess had defended the original proceeding on the merits, and did not appeal the September 8, 2015 judgment.  The same is true in this case.  Jessie was a party to Toni's visitation action, participated in that action on the merits, and never challenged the chancery court's jurisdiction on any basis.  Indeed, Jessie Price's attorney agreed to the form of the final order of visitation entered in the consolidated proceeding, which specifically provides that "[the] Court has complete and plenary jurisdiction over the subject matter and the parties involved herein." Finally, Jessie did not appeal the April 2015 visitation order.

¶28.    As we explained in *Burgess*, 2018 WL 4705709, at *3 (¶17), "[a]ny challenge to the . . . court's jurisdiction should have been taken up in the original proceeding or on direct appeal from the original order."  In this regard, "[o]nce a case is litigated to a final judgment, and no appeal is taken, a party who participated in the original litigation cannot collaterally attack the court's jurisdiction in a later proceeding." *Id.* (citing *Phillips v. Kelley*, 72 So. 3d 1079, 1084 (¶18) (Miss. 2011) ("[S]ubject matter jurisdiction . . . may not be attacked collaterally.") (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009)).  *See also Dep't of Human Servs. v. Shelnut*, 772 So. 2d 1041, 1045 (¶13) (Miss. 2000) ("The principles of res judicata apply to questions of jurisdiction as well as to other issues whether the questions relate to jurisdiction of the subject matter or jurisdiction of the parties."); Restatement (Second) of Judgments §12 (1982) ("When a court has rendered a judgment in

11

a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation [subject to three narrow exceptions, inapplicable in this case].").  We find the same principle applies here and bars Jessie's attempt to challenge the April 3, 2015 visitation order on jurisdictional grounds.

### B.    The May 2017 Contempt Determination

¶29.    Jessie asserts that the chancery court erred in finding her in contempt of its April 2016 contempt order.  We agree and reverse the chancery court's May 2017 contempt order for the reasons addressed below.

¶30.    "[C]ontempt matters are committed to the substantial discretion of the trial court." *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (¶31) (Miss. 2014).  In this regard, the findings of the chancery court "will not be disturbed unless manifestly wrong."  *Wing v. Wing*, 549 So. 2d 944, 947 (Miss. 1989).  Relevant here, however, is that "[b]efore a party may be held in contempt for failure to comply with a judgment, the judgment must be complete within itself leaving open no matter or description or designation out of which contention may arise as to its meaning." *Gutierrez*, 153 So. 3d at 713 (¶31) (internal quotation mark omitted).  Additionally, "'no charge of contempt will be sustained where the final decree is insufficient to advise the party affected in clear and unequivocal language of that which he has been ordered to do.'" *Id.* (quoting *Switzer v. Switzer*, 460 So. 2d 843, 846 (Miss.1984)).

¶31.    We find that the chancery court manifestly erred in rendering its May 2017 contempt order because the court's April 2016 contempt order was not sufficiently specific or clear enough to sustain a finding of contempt.  The April 2016 contempt order did not provide any

12

specific visitation dates, any specific guidance on the logistics involved in John's summer visit to Indiana, or any other visit. Nor did the order provide any guidance on how the parties were to handle any hesitancy on John's part to participate in visitation with Toni.

¶32. We find the lack of specific guidance on these issues relevant given the circumstances leading to the first motion for contempt and the court's entry of the April 2016 contempt order. The hearing transcript relating to that order, in which the court found Jessie in contempt of the original visitation order, reflects that the only visitations that both Toni and Jessie agreed "went well" were the two mandated visitations set to occur on specified dates. The transcript from that hearing also reflects that there were problems between Toni and Jessie in arranging non-scheduled visits, and, according to Jessie, John was hesitant to go with the Grundys because he did not know them.

¶33. Instead of specific visitation dates and detailed guidance on exactly how visitation must be arranged and take place, the April 2016 contempt order merely directed the parties "to communicate with each other in good faith . . . to make . . . visitation occur with the least amount of difficulty and confusion." The parties were further admonished to "refrain from speaking in a negative, ill or derogatory manner about the other or the family of the other in front of [John]" and to "conduct themselves in a mature and responsible manner," but they were given no concrete guidance with respect to unscheduled visitation. Nor did the original April 2015 visitation order provide any such guidance. As to unscheduled visitation, the original visitation order contained the same vague language urging the parties, for example, to coordinate times and dates for visitation "to occur under such circumstances as may be

13

harmonious and proper and for the best interest of the child" and "to cooperate and work with each other for their mutual benefit and harmony."

¶34.    In comparison, after having issued his second contempt order on May 18, 2017, the chancellor appears to have recognized that the parties require explicit directions with respect to conducting visitation. In addressing summer visitation in his May 26, 2017 order suspending Jessie's incarceration, the chancellor specifically directed "[Jessie] to deliver [John] to the appropriate airport so he can fly to Indianapolis for [the summer] visitation." The chancellor further directed "[Jessie] to do everything within her power to make sure said visitation occurs without incident or confusion. The details, times, flight numbers, etc., shall be communicated by and between the parties directly or to those persons designated by the parties."   This necessary detail was lacking in the April 2016 contempt order or the court's original visitation order.

¶35.    Given the order's open-ended and ambiguous nature, we find that the chancery court's April 2016 contempt order was "insufficient to advise the [parties] affected in clear and unequivocal language of that which [they have] been ordered to do." *Gutierrez*, 153 So. 3d at 713 (¶31).  Accordingly, we find that the chancery court erred in finding Jessie in contempt of that order, and we reverse and render the chancery court's May 2017 contempt order, including all costs, fees, reimbursements, and attorney fees awarded under that order. *See Goodson v. Goodson*, 816 So. 2d 420, 423-24 (¶¶5-8) (Miss. Ct. App. 2002) (reversing contempt order due to its ambiguity, among other reasons, where the chancery court offered no guidance on how the mother was to "rectify" her contempt of the court's visitation order

14

when the parties' daughter refused to comply with the visitation schedule by visiting her father); *see also Gutierrez*, 153 So. 3d at 713-14 (¶¶32-33) (reversing contempt order against former husband where temporary order entered by the court created ambiguities in former husband's support obligations); *Wing*, 549 So. 2d at 947 (reversing contempt judgment against former husband for failing to abide by an escalation clause in a property-settlement agreement where there existed a "genuine dispute" over its interpretation).

¶36.    **REVERSED AND RENDERED.**

**BARNES, C.J., GREENLEE, TINDELL, McDONALD AND C. WILSON, JJ., CONCUR. WESTBROOKS AND LAWRENCE, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.; GREENLEE, J., JOINS IN PART.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶37.    Because the order was sufficiently detailed to form a basis for contempt, I respectfully dissent from the majority's finding that the contempt order issued by the chancery court be reversed.

¶38.    Chancery courts sit as judges in courts of equity "to ensure the full and proper exercise of the powers of the courts and the rule of law and equity on behalf of all litigants." Matthew Thompson, *Miss. Divorce, Alimony and Child Custody,* § 9:1 (2018). To carry out these functions chancery courts are afforded substantial discretion to order relief and result. *H.L.S. v. R.S.R.*, 949 So. 2d 794, 801 (¶22) (Miss. Ct. App. 2006). This includes the power of contempt to enforce a final judgment. Miss. Code Ann. § 9-5-87 ("[T]he chancery court . . . shall have power to punish any person for breach of an injunction, or any other order, decree,

or process of the court. . . .").

¶39. In the case before us, Price defended her contemptuous actions by arguing that the chancery court's order was not "sufficiently specific." From the plain face of the order, I cannot agree. The order required Price to allow visitation between John and Lisenby-Grundy in Indiana, without Price's presence, for two consecutive weeks over the summer. The order provided a "when" (the summer months); the "where" (Indiana); the "how" (two weeks); and even the "who" (John without Price's presence). The parties were ordered to "confer and communicate with each other in good faith to determine the exact dates for summer visitation." It is plain that summer is between John's last day of the current school year, and the first day of the upcoming school year. This is not vague. Our precedent does not require chancellors to act as travel agents for litigants.

¶40. Further, we can infer that Price was sufficiently clear in her understanding of the order when she coordinated with Lisenby-Grundy to arrange a visit with John in Indiana in 2016. Why this visit never occurred is a source of contention between the parties. Nevertheless, the visit did not happen in violation of the plain language of the order.

¶41. In addition to the summer visitation, Price was to allow visitation for one week commencing the day after Christmas. The record offers no evidence of any attempt by Price to facilitate a Christmas visit. Even with a specific date, I find it difficult to believe Price did not understand what was being asked of her.

¶42. The record contains three motions for relief filed by Price. The first and second motions petitioned for relief due to financial constraints. Price requested relief of the

16

financial obligations imposed by the order due to her inability to pay. The third and last motion challenged the order on procedural grounds, i.e., failure to include necessary parties, jurisdiction, et cetera. The chancery court denied all of these motions. Not once did Price mention, address or dispute in any manner the summertime visitation awarded by the court.

¶43. Price was afforded the opportunity to address the visitation in her motions for relief but chose not to. She did not provide any evidence of disagreement or misunderstanding with the visitation requirements. This reinforces that the order was not too ill-defined, but it was simply disobeyed. What is before us a clear defiance of an order.

¶44. Trial courts are better equipped through both "temporal and visual proximity" to decide contempt matters than appellate courts. *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1019 (¶50) (Miss. 2012). A citation of contempt is proper when a party has "willfully and deliberately ignored an order of the court." *Id*. In the case at bar, it is uncontested that Price flatly refused to comply with the chancellor's orders. A violation of a court order is per se contempt and the chancery court was within its discretion to find Price in contempt.

¶45. I concur with the majority in affirming that Price is barred from challenging the April 3, 2015 visitation order on jurisdictional grounds. But I respectfully dissent with the majority's decision to reverse and render the chancery court's May 2017 order for the above stated reasons.

**J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ., JOIN THIS OPINION. GREENLEE, J., JOINS THIS OPINION IN PART.**